STATE OF NORTH CAROLINA v. JAMES WALLACE JACKSON

No. 477A87

(Filed 5 May 1988)

1. **Constitutional Law § 60; Jury § 7.14— peremptory challenges of black jurors— no violation of equal protection**

    A black defendant's equal protection rights were not violated by the State's exercise of peremptory challenges of black jurors where the prosecution articulated racially neutral reasons for exercising its challenges by showing that it sought jurors who were "stable, conservative, mature, government oriented, sympathetic to the plight of the victim, and sympathetic to law enforcement crime solving problems and pressures," and where the trial court also considered evidence that (1) one of the principal witnesses for the State was a black police officer, (2) the first peremptory challenge was to a white juror, (3) the State left a black person on the jury when it still had three peremptory challenges, and (4) there were no comments by either prosecutor which would indicate a discriminatory intent by the State.

2. **Constitutional Law § 60; Jury § 7.14— peremptory challenges of blacks—hearing on Batson violation—no right to examine prosecutor**

A defendant does not have the right to examine the prosecuting attorney in a hearing at trial or post trial to determine if there has been a *Batson* violation by the prosecution's use of peremptory challenges to exclude members of defendant's race from the petit jury.

Justice FRYE concurring.

Justice MARTIN joins in this concurring opinion.

APPEAL by defendant from an order of *Ellis, J.*, at the 7 May 1987 Criminal Session of Superior Court, WAKE County. Heard in the Supreme Court 16 March 1988.

This is the third time this case has been in this Court. In *State v. Jackson*, 308 N.C. 549, 304 S.E. 2d 134 (1983), we held the defendant's confession was admissible in evidence. We found no error in the defendant's conviction and sentence in *State v. Jackson*, 317 N.C. 1, 343 S.E. 2d 814 (1986). The United States Supreme Court on 23 February 1987 remanded the case to this Court for further consideration in light of *Griffith v. Kentucky*, 479 U.S. ---, 93 L.Ed. 2d 649 (1987) and *Batson v. Kentucky*, 476 U.S. 79, 90 L.Ed. 2d 69 (1986).

We remanded the case to the Superior Court of Wake County for a determination as to whether the defendant's equal protection rights had been violated by the prosecutor's improper exercise of peremptory challenges of black jurors. The defendant subpoenaed Superior Court Judge Donald W. Stephens and Special Deputy Attorney General Joan H. Byers to testify at the hearing. Judge Stephens and Ms. Byers had prosecuted the defendant at his trial before Judge Stephens was appointed a superior court judge. The court quashed these subpoenas on motion by the State.

The selection of the jury at the trial of this case was not transcribed. The attorneys who represented the defendant at trial and Special Deputy Attorney General Joan Byers, who represented the State, stipulated what happened at the trial, which stipulation was given to the court. In addition the court was given the trial notes of the attorneys who participated in the trial. Judge Stephens' affidavit was also submitted to the court. It was stipulated that the State used five peremptory challenges to

remove four blacks and one white from the jury. The jury that tried the case consisted of eleven white persons and one black person. Ms. Byers stated to the court, "Prior to trial my co-counsel and I felt that it was of the utmost importance that we select a jury that was stable, government oriented, employed, and had sufficient ties to the community, and a mind-set, if you will, that would . . . pay more attention to the needs of law enforcement than the fine points of individual rights." She also stated that a black detective was to be one of the principal witnesses for the State and it was important to establish his credibility. For this reason Ms. Byers said race did not enter the consideration of the type person the State wanted on the jury.

Ms. Byers stated that the State peremptorily challenged one black woman because she was unemployed. Ms. Byers said the prosecution did not feel that an unemployed person had as significant a stake in an orderly society as an employed person. Ms. Byers also stated that this person had been a student counselor at Shaw University and the prosecution felt "that was too liberal a background and her subsequent questions and demeanor gave us that feeling."

Ms. Byers stated that a black male was peremptorily challenged because he was a third year law student at the University of North Carolina. He had been taught by professors of "somewhat liberal views." The prosecution was afraid he would lead the other jurors because he had studied law.

Ms. Byers said the prosecution peremptorily challenged a second black female because she was unemployed and "she answered us hesitantly and again she appeared indifferent or hostile about either being a member of a jury or indifferent or hostile to us." Ms. Byers gave as the prosecution's reason for removing a third black female that the prosecution was afraid she would identify with the defendant's mother who it was anticipated would testify. The juror had a son of the approximate age of the defendant and although she had a daughter the same approximate age as the victim the prosecution was afraid she would lean toward the defendant. The State successfully challenged two black jurors for cause.

The court found that the defendant had "made a prima facie showing of the inference of purposeful discrimination." It found

further that the State had "articulated a neutral explanation related to this particular case for each of the peremptory challenges it used and that the State has given a clear and reasonably specific explanation of its legitimate reasons for the exercising of its challenges." The defendant's motion for a mistrial was denied.

The defendant appealed.

*Lacy H. Thornburg, Attorney General, by Barry S. McNeill, Assistant Attorney General, for the State.*

*Gordon Widenhouse for defendant appellant.*

WEBB, Justice.

[1] This appeal brings to the Court two questions. The first is whether there was error in the finding of the superior court that this black defendant's right to the equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution has not been violated by the discriminatory exclusion of members of his race from the petit jury. The second question involves the procedure which was used in the superior court to determine if such a violation had occurred.

In *Batson v. Kentucky*, 476 U.S. 79, 90 L.Ed. 2d 69, the United States Supreme Court overruled *Swain v. Alabama*, 380 U.S. 202, 13 L.Ed. 2d 759 (1965), and held a prima facie case of purposeful discrimination in the selection of a petit jury may be established on evidence concerning the prosecutor's exercise of peremptory challenges at the trial. In order to establish such a prima facie case the defendant must be a member of a cognizable racial group and he must show the prosecutor has used peremptory challenges to remove from the jury members of the defendant's race. The trial court must consider this fact as well as all relevant circumstances in determining whether a prima facie case of discrimination has been created. When the trial court determines that a prima facie case has been made, the prosecution must articulate legitimate reasons which are clear and reasonably specific and related to the particular case to be tried which give a neutral explanation for challenging jurors of the cognizable group. The prosecutor's explanation need not rise to the level of justifying a challenge for cause. At this point the trial court must determine if the defendant has established purposeful discrimination.

Since the trial court's findings will depend on credibility, a reviewing court should give those findings great deference. *Batson*, 476 U.S. 98, n. 21, 90 L.Ed. 2d 89, n. 21.

In this case the prosecutors stated as their criteria for selecting jurors that they be "stable, government oriented, employed and had sufficient ties to the community, and a mind-set . . . that would pay more attention to the needs of law enforcement than the fine points of individual rights." In addition to this statement of the State's criteria for jury selection, other factors which the court may have taken into account were (1) one of the principal witnesses for the State was a black police officer, (2) the first peremptory challenge was to a white juror, (3) the State left a black person on the jury when it still had three peremptory challenges, and (4) there were no comments by either prosecutor which would indicate a discriminatory intent by the State. With the criteria advanced by the State and taking into account all circumstances of the case, we cannot hold, after paying special deference to the findings of the superior court, that it was error to deny the defendant's motion for mistrial.

In reaching this conclusion we have been helped by cases from other jurisdictions. In *United States v. Cartlidge*, 808 F. 2d 1064 (5th Cir. 1987), the following explanations were held sufficient: an excused juror was young, single and unemployed; another excused juror avoided eye contact; a third excused juror was divorced and appeared to have a low income occupation. In *United States v. Mathews*, 803 F. 2d 325 (7th Cir. 1986), *rev'd on other grounds*, --- U.S. ---, --- L.Ed. 2d ---, 108 S.Ct. 883 (1988), a prosecutrix' statement was held to be a sufficient explanation for peremptory challenges to two jurors. The prosecutrix said one juror was late coming to court which indicated a lack of commitment to the importance of the proceedings. In the courtroom she did not seem to be attentive to the proceedings at hand. A second juror spent a great deal of time looking at the prosecutrix in what she felt was a hostile way. The prosecutrix felt she would be "strongly for or against her position." In *People v. Cartagena*, 128 A.D. 2d 797, 513 N.Y.S. 2d 497 (1987), a prosecutor's affidavit was held to be a sufficient explanation. The prosecutor said in his affidavit that he excused four black jurors based on "their educational backgrounds, their employment history, the employment of their spouses and children, and criminal record, if any." In

*Chambers v. State*, 724 S.W. 2d 440 (Tex. Ct. App. 1987), no error was found when the prosecutor explained challenges to four jurors. He said one juror's religious preference was Church of Christ which the prosecutor felt was a "little bit away from the mainstream," he had not served on a jury before, the space on the jury card for name of husband or wife was marked "not applicable" and the space for number of children was unmarked, and his handwriting was not very legible. The explanation for excusing the second juror was that he had misspelled "Baptist," he was very young (23 years of age) and his name "rang a bell." A third juror was excused because she was a Jehovah's Witness which the prosecutor felt was a fringe religious group and her juror card indicated she was unmarried with two children. A fourth juror was excused because the prosecutor "just didn't feel like the juror was really attentive to what was going on. I had a feeling he was nodding his head a little too much towards you, and not enough towards me."

The defendant, relying on *Slappy v. State*, 503 So. 2d 350 (Fla. App. 3d 1987), argues that the only legitimate criterion articulated by the State for challenging jurors was of a person more likely to value the needs of law enforcement than the rights of individuals. He says that only two of the excused jurors, one white and one black, fit this category. He contends that the criteria used by the State "sweep too broadly" to be valid. The defendant also argues that the criteria advanced by the State were not applied except to excuse black jurors. He contends the State gave disparate treatment to white and black jurors. Two black unemployed persons were challenged by the State and two white unemployed jurors were passed by the State. The defendant says this illustrates the disparate treatment. The State said stability was one criterion of its jury profile and the defendant assumes this means long term residency. Two blacks who had lived twenty and thirty years respectively in the community were excused. Two whites, one of whom had lived two years and the other had lived five years in the community, were kept on the jury. The defendant says this showed the disparate treatment by the State of prospective jurors.

We disagree with the defendant as to the validity of the criteria used by the State in its profile of acceptable jurors. We believe the profile showed, as found by Judge Ellis, that the

State wanted a jury that was "stable, conservative, mature, government oriented, sympathetic to the plight of the victim, and sympathetic to law enforcement crime solving problems and pressures." These are legitimate criteria in picking a jury.

As to the two unemployed black jurors who were excused, there were additional factors which distinguished them in the eyes of the prosecution from the two unemployed whites who were not excused. One of the excused blacks had been a counselor at Shaw University and the State felt this might make her sympathetic to the defendant. The other was excused by the prosecution because her non-verbal communication suggested hostility and indifference. She had lived in the community for thirty years but the State did not feel this compensated for her hostility. The other black juror who was excused had lived in the community for twenty years but she had a son who was of the approximate age of the defendant. The prosecution stated it felt this might make her sympathetic to the defendant.

We might not have reached the same result as the superior court but giving, as we must, deference to its findings, we hold it was not error to deny the defendant's motion for mistrial.

[2] The defendant also assigns error to the quashing of the subpoenas to Judge Stephens and Ms. Joan Byers, the prosecutors in the case. The defendant contends under this assignment of error that he was not allowed to put on evidence at the hearing. The record does not reveal evidence offered by the defendant other than testimony which might have been elicited from Judge Stephens and Ms. Byers. The only question raised by this assignment of error is whether the defendant had the right to examine the prosecutors in a hearing to determine if there has been a *Batson* violation.

In *Batson* the Supreme Court declined to formulate procedures to be followed in determining whether a constitutional violation had occurred. The question of examining the prosecutor was not raised in the cases cited above. In two cases federal courts have held that the judge could conduct an in camera hearing out of the presence of the defendant to let the prosecutor explain his reasons for peremptorily challenging black jurors. *United States v. Tucker*, 836 F. 2d 334 (7th Cir. 1988); and *United States v. Davis*, 809 F. 2d 1194 (6th Cir.), *cert. denied*, --- U.S.

---, 97 L.Ed. 2d 740 (1987). In *United States v. Thompson*, 827 F. 2d 1254 (9th Cir. 1987) and *United States v. Gordon*, 817 F. 2d 1538 (11th Cir. 1987), *vacated in part on other grounds*, 836 F. 2d 1312 (11th Cir. 1988), it was held that a defendant is entitled to an in-court hearing but neither of these cases held the defendant is entitled to examine the prosecutor. The defendant relies on *Roman v. Abrams*, 608 F. Supp. 629 (S.D.N.Y. 1985), *mod. on other grounds*, 790 F. 2d 244 (2nd Cir. 1986). We do not believe this case is helpful to the defendant. In that case the defendant had petitioned the federal district court for a writ of habeas corpus after he had been convicted in a state court. In the hearing in federal court the state prosecutor testified. We do not believe this is precedent for a hearing in a state court in which the prosecutor is appearing as an attorney.

We hold that a defendant who makes a *Batson* challenge does not have the right to examine the prosecuting attorney. In balancing the arguments for and against such an examination, we believe the disruption to a trial which could occur if an attorney in a case were called as a witness overbears any good which could be obtained by his testimony. We do not believe we should have a trial within a trial. The presiding judges are capable of passing on the credibility of prosecuting attorneys without the benefit of cross-examination.

The defendant contends he was deprived of an opportunity to make a stronger showing because the State conceded a prima facie case of discrimination and presented its explanation without allowing the defendant to put on evidence as to the prima facie case. He says for this reason he was not allowed to make as strong a showing for a prima facie case as could have been done. We know of no reason why the defendant could not have offered evidence to strengthen his case after the State had made its showing. The record does not show that the defendant offered to make any showing in addition to the evidence received other than his subpoenas to the prosecutors.

The defendant also argues that he should have been allowed to examine the prosecutors in this case because the *Batson* hearing did not occur at the trial. We know of no reason why the defendant should be allowed to examine a prosecuting attorney at a post trial hearing if he could not do so at trial.

The order of the superior court is

Affirmed.

Justice FRYE concurring.

I concur in both the reasoning and conclusion reached by the Court. I nonetheless write separately to express my concerns regarding the future application of today's decision.

In *Batson v. Kentucky*, 476 U.S. 79, 90 L.Ed. 2d 69 (1986), the United States Supreme Court held that the discriminatory use of peremptory challenges in a single case violates the Fourteenth Amendment to the United States Constitution. That Court held that the equal protection clause forbids the prosecutor from challenging potential black jurors solely because of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant. *Id.* The Supreme Court, however, declined to formulate particular procedures to be followed by trial courts upon a timely objection to a prosecutor's challenges. *Id.* at 99, 90 L.Ed. 2d at 89-90. Today, this Court breathes life into the *Batson* holding by formulating procedures to be followed in determining whether a black defendant's constitutional right to equal protection has been violated by the State's use of peremptory challenges to exclude blacks from petit jury service.

The primordial concern and motivation behind the *Batson* decision was to afford black citizens "the same right and opportunity to participate in the administration of justice enjoyed by the white population." *Id.* at 91, 90 L.Ed. 2d at 84, *citing Swain v. Alabama*, 380 U.S. 202, 13 L.Ed. 2d 755 (1965). To that end, the State's use of peremptory challenges to strike all or a disproportionate number of black prospective jurors will no longer be immune from constitutional scrutiny. Once the defendant has made a *prima facie* showing of purposeful discrimination, the burden then shifts to the State to articulate a racially neutral reason for exercising its challenges.

In this case, this Court is satisfied that the proffered explanations by the State sufficiently demonstrate racially neutral reasons for the State's peremptory challenges of most of the black jurors tendered to it. Our action today must not be interpreted as

a license for prosecuting attorneys to proceed with "business as usual," under the assumption that this right, implicit in the equal protection clause and given vitality by the *Batson* ruling, is a right without a remedy. Although this Court will "rely on the good judgment of the trial courts to distinguish bona fide reasons for such peremptories from sham excuses belatedly contrived to avoid admitting acts of group discrimination," *People v. Hall*, 35 Cal. 3d 161, 167, 197 Cal. Rptr. 71, 75, 672 P. 2d 854, 858 (1983), we will review with a scrupulous eye such proffered reasons in an effort to thwart the remnants of the past pernicious practice of excluding blacks from juries for no other reason than for the color of their skin.

In the case *sub judice*, the State sought jurors that fit neatly into an acceptable "profile." This profile showed that the State sought individuals who were "stable, conservative, mature, government oriented, sympathetic to the plight of the victim, and sympathetic to law enforcement crime solving problems and pressures." While I agree with the Court that these are "legitimate criteria in picking a jury" in this case, *State v. Jackson*, slip op. at 8, I envision similar "profiles" that may be constructed in a manner so as to systematically exclude blacks. Such "profiles" must not "sweep so broadly" as to attenuate their validity and justify the exclusion of any and all blacks. *See State v. Gilmore*, 103 N.J. 508, 511 A. 2d 1150 (1986). For that reason, such "profiles" should be particularly suspect in a court's determination that the State has offered a sufficient response to defendant's challenge. For this profile to withstand such scrutiny, it must be legitimate, reasonably specific, and related to the particular case to be tried. *Batson*, at 98, 90 L.Ed. 2d at 88.

Absent the total abolition of peremptory challenges, we likely will again face the challenge of determining whether they have been used in an unconstitutional manner. It is the province of the General Assembly to determine whether peremptory challenges have outlived their usefulness. However, it is the province of the courts to ensure that they are used in such a manner not offensive to the constitutional rights of our citizens. We must remain alert to offers of proof made by the State that are but mere colloquial euphemisms for the very prejudice that constitutes invidious discrimination. Too, we must be careful not to lessen the burden of the State and therefore put a crippling burden on the

defendant so that defendant's right to trial by an impartial jury is so prejudiced that he is effectively left a right without a remedy.

I am satisfied that, in the instant case, the trial judge undertook "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available" and that he properly found that the State's use of peremptory challenges was not purposefully discriminatory. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266, 50 L.Ed. 2d 450, 465 (1977). Accordingly, I join the Court's decision.

Justice MARTIN joins in this concurring opinion.