STATE OF NORTH CAROLINA v. WILLIAM HOWARD PORTER

No. 724A86

(Filed 10 May 1990)

**1. Jury § 6.3 (NCI3d)— first degree murder—jury selection— questions concerning racism in criminal justice system**

The trial court did not err in a murder prosecution in Robeson County by permitting the prosecutor to question Indian prospective jurors regarding their perceptions of racism in the criminal justice system. The State as well as defendant is entitled to a fair trial, the case was tried at a time when racial tensions in Robeson County were particularly high, and the challenged line of questions was a permissible effort to determine whether prospective jurors' perceptions of the trial process would affect their ability to render a fair verdict.

**Am Jur 2d, Jury § 202.**

**2. Jury § 7.14 (NCI3d)— first degree murder—jury selection— peremptory challenges—racial discrimination**

Under *Batson v. Kentucky*, 476 U.S. 79, a defendant makes a *prima facie* case of purposeful discrimination in the selection of the petit jury if he shows that he is a member of a cognizable racial minority; members of his racial group have been peremptorily excused; and racial discrimination appears to have been the motivation for the challenges. When defendant makes out a *prima facie* case, the burden of production shifts to the State to come forward with a neutral explanation for each peremptory strike, and defendant has the right of surrebuttal to show that the prosecutor's explanations are a pretext. Factors to which the court should refer in assessing whether the articulated reasons are legitimate or a pretext include the susceptibility of the particular case to racial discrimination, the prosecutor's demeanor, and the explanation itself.

**Am Jur 2d, Jury § 233.**

**3. Jury § 7.14 (NCI3d)— first degree murder—jury selection— peremptory challenges—not racial**

The prosecutor did not impermissibly exercise peremptory challenges on the basis of race where the prosecutor waived argument as to whether a *prima facie* case existed;

STATE v. PORTER

[326 N.C. 489 (1990)]

the trial court properly required the prosecutor to explain his use of peremptory challenges given the prosecutor's waiver and the State's use of ten of thirteen peremptory challenges against Indian prospective jurors; and the prosecutor gave an individual explanation for each peremptory challenge of an Indian venireperson. It is relevant but not dispositive that the impaneled jury consisted of four Indians, four Blacks, and four Whites, mirroring exactly the racial composition of Robeson County; the victim, both defense counsel, and defendant were Indian; defense counsel peremptorily challenged two Indian prospective jurors; and defendant at trial made no attempt to show that the prosecutor's explanations were merely pretextual. Any disparate treatment which may have occurred was not the result of racial and discriminatory motivation; choosing jurors involves a complex weighing of factors in which a single factor rarely controls the decision-making process. Specific findings of fact supporting the conclusion that no discriminatory purpose was involved are not necessary where there was no material conflict in the evidence.

**Am Jur 2d, Jury § 233.**

**4. Constitutional Law § 32 (NCI3d) — murder — jury selection — ejection from gallery**

The trial court did not violate defendant's right to a public trial under the North Carolina Constitution by ejecting a prospective juror from the gallery where that person had remained in the courtroom gallery after being excused and advised at least one prospective juror on the meaning of aggravating and mitigating circumstances. North Carolina Constitution, art. I, § 18.

**Am Jur 2d, Trial § 33.**

**5. Jury § 6.3 (NCI3d); Criminal Law § 411 (NCI4th) — first degree murder — jury selection — statement that death penalty central issue — no error**

There was no error in a first degree murder prosecution where the prosecutor repeatedly stated during jury selection that the death penalty was the central question. The prosecutor did not interject an opinion but merely stated what the jury already knew.

**Am Jur 2d, Jury §§ 289, 290.**

**STATE v. PORTER**

[326 N.C. 489 (1990)]

6. **Jury § 6.4 (NCI3d) — first degree murder — jury selection — questions concerning death penalty**

There was no error in a first degree murder prosecution where the prosecutor asked each juror prior to impaneling whether they could be a part of the legal machinery which might bring about the death penalty. The prosecutor's question emphasized each juror's present participation in the decision-making process and was not made to badger or intimidate, but to determine whether the jurors could comply with the law.

**Am Jur 2d, Jury §§ 289, 290.**

7. **Criminal Law §§ 415, 728 (NCI4th) — first degree murder — consideration of second degree murder**

Although defendant in a first degree murder prosecution contended that the cumulative effect of a statement during the prosecutor's closing argument, a sustained objection to the defendant's closing argument, and an unobjected to instruction on second degree murder effectively excluded second degree murder from the consideration of the jury, there was no error in whole or in part. The prosecutor's closing argument was specifically advocating a decision based on the evidence, the trial judge properly prohibited that part of defendant's argument which referred to what the trial judge believed, and no expression of opinion by the trial judge arises merely from the comparative amount of time devoted to giving an instruction.

**Am Jur 2d, Homicide §§ 463, 529, 530.**

8. **Homicide § 24.1 (NCI3d) — first degree murder — deadly weapon — instruction on malice**

The trial judge did not commit plain error in its instruction on malice in a first degree murder prosecution where the court stated that malice was implied from a killing with a deadly weapon and peremptorily instructed the jury that a .25-caliber gun is a deadly weapon where there was no evidence of provocation on the part of the victim. All killings accomplished through the intentional use of a deadly weapon are deemed to be malicious and unlawful absent evidence of mitigating or justifying factors, and the instruction did not relieve the State of its burden of proof.

**Am Jur 2d, Homicide §§ 500, 501.**

9. **Homicide § 25.2 (NCI3d) — first degree murder — instructions — malice as evidence of premeditation and deliberation**

There was no plain error in a first degree murder prosecution from the court's instruction that the jury could consider evidence relating to expressed malice as evidence tending to show premeditation and deliberation. Although defendant argued that the jury could have convicted defendant of first degree murder without ever having found the separate elements of premeditation and deliberation, the judge had stated that threats, the manner of killing, and defendant's declarations were proper for the jury's consideration of premeditation and deliberation. Furthermore, there was no error in permitting the jury to consider evidence of defendant's conduct after the killing.

**Am Jur 2d, Homicide §§ 500, 501.**

10. **Homicide § 26 (NCI3d) — first degree murder — instructions — provocation**

The trial court did not improperly instruct the jury on provocation in a first degree murder prosecution. Even if verbal abuse or suspicions of adultery can negate deliberation and reduce first degree murder to second degree murder, mere jealousy, without more, cannot be sufficient to negate deliberation.

**Am Jur 2d, Homicide § 53.**

11. **Criminal Law §§ 463, 465 (NCI4th) — first degree murder — prosecutor's argument**

There was no prejudicial error in a prosecutor's descriptions of the elements of premeditation and deliberation in a first degree murder prosecution where the prosecutor stated that deliberation meant a cold-blooded murder and that it did not include the case where a man comes home and "finds his wife shacked up there with somebody." Such an example offered for the sake of comparison was not so grossly improper as to require the trial court to intervene *ex mero motu*. Moreover, the prosecutor's argument that defendant's statement that he had meant to kill the victim, made after shooting her three times, was evidence of premeditation and deliberation was a correct statement of the law.

**Am Jur 2d, Homicide § 463.**

STATE v. PORTER

[326 N.C. 489 (1990)]

**12. Criminal Law § 442 (NCI4th) — first degree murder — prosecutor's argument — jury as body of society**

There was no prejudicial error in a first degree murder prosecution from the prosecutor's argument that the jury was the body of society where the evidence of defendant's guilt was overwhelming.

**Am Jur 2d, Homicide § 463.**

**13. Criminal Law § 1312 (NCI4th) — first degree murder — sentencing — evidence of other crimes**

The trial court erred in a first degree murder prosecution by allowing the State to cross-examine defendant about prior convictions more than ten years old. The convictions were not admissible for the purpose of establishing the aggravating factors set out in N.C.G.S. § 15A-2000(e)(3) because it was not clear which of the convictions, if any, involved the threat or use of violence and there was no doubt that three and arguably five of the convictions did not involve the threat or use of violence. Moreover, the State concedes that the record does not indicate that the prosecutor gave the required notice and there was no indication that the judge indulged in the weighing process required by N.C.G.S. § 8C-1, Rule 609. There was prejudice because three of the convictions occurred prior to *Gideon v. Wainwright*, 372 U.S. 335, and defendant may have been convicted without the assistance of counsel, and defendant's criminal record assured the jury that defendant was not capable of rehabilitation and was thus a fitting subject of the death penalty.

**Am Jur 2d, Criminal Law § 599.**

**14. Criminal Law § 1362 (NCI4th) — first degree murder — sentencing — age of defendant as mitigating circumstance — not submitted**

The evidence did not support submitting defendant's age of sixty-one years as a mitigating circumstance during sentencing for first degree murder where defendant's chronological age of sixty-one and borderline I.Q. of seventy-one were balanced against defendant's youthful interest in the victim, his vigorous responses to the prosecutor's cross-examination, and his physical prowess in his attempts to escape.

**Am Jur 2d, Criminal Law §§ 598, 599; Homicide §§ 554, 555.**

STATE v. PORTER

[326 N.C. 489 (1990)]

APPEAL of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing the sentence of death entered by *Fountain, J.*, at the 1 December 1986 Criminal Session of Superior Court, ROBESON County. Heard in the Supreme Court 13 November 1989.

*Lacy H. Thornburg, Attorney General, by Steven F. Bryant, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Mark D. Montgomery, Assistant Appellate Defender, for defendant-appellant.*

MEYER, Justice.

In the early hours of Sunday, 23 March 1986, defendant shot and killed his girlfriend, Jeanie Brooks, inside the Oak Ridge Club, a Lumberton nightclub. A jury convicted defendant of first-degree murder and recommended the death sentence. The trial court sentenced in accordance with the recommendation. We find no error in the guilt phase of the trial. However, for reversible error in the sentencing proceeding, we remand for a new sentencing hearing.

At about 5:00 p.m. on Saturday, 22 March 1986, witnesses saw defendant in the company of Jeanie Brooks. Pointing in the direction of Jeanie, defendant stated, "I spent my money on the s---of-a-b--- and I'll kill her before the nights [sic] over." Carl Locklear noticed at the time that defendant had a small-caliber pistol hidden in his boot.

Later in the evening, around 10:30 p.m., witnesses saw defendant and Jeanie Brooks together at the Oak Ridge Club. When Jeanie left defendant's table to speak with friends, defendant asked a companion, Ventris Brooks, "Now, lookie there, what would you do to somebody like that who plays you for a g--d--- fool." On her return, defendant told Jeanie, "What do you expect you playing me for a g--d--- fool. You don't play me for a g--d--- sucker.... I'll blow your g--d--- brains out." When Jeanie later asked her uncle, Ventris Brooks, to dance with her, defendant told her she was to "dance with no g--d--- body. You're here with me." Defendant again told Jeanie he would "blow her d--- brains out." At the time of the killing, Jeanie was twenty-two years old, and defendant was sixty-one.

Ventris Brooks testified that when he entered the club at 10:30 p.m., employees of the club had searched him for weapons

pursuant to club policy. According to club owner Edna Locklear, patrons were asked to take all discovered weapons back to their car.

At about 11:50 p.m., Jeanie left the club in the company of her nineteen-year-old first cousin, Ronnie Revels. They sat in his car for about fifteen minutes, smoking marijuana. Revels and Jeanie reentered the club shortly after they observed defendant step outside and approach his own car, which was parked alongside Revels'. Revels testified that although he had been searched for weapons when he had first arrived at the club at about 11:00 p.m., he and Jeanie were not searched when they reentered the club.

Nick Locklear, the club parking lot attendant, testified that defendant came outside seeking help to break into his car. Defendant stated that his keys were locked inside the automobile and that he needed something to knock the window out. Locklear saw defendant knock out a window, open the right front door, and retrieve an unknown object from beneath the car seat. Locklear then saw defendant return in the direction of the club entrance.

Meanwhile, Jeanie approached Gary Carter and asked if he wanted to dance. Earlier in the evening, Carter had asked Jeanie to dance, but defendant had interrupted and said that she did not want to dance. As Carter and Jeanie danced, defendant went to the dance floor, grabbed Jeanie by the arm, and told her she was not to dance with anyone else but him. Carter left the dance floor. As Carter proceeded to leave the club with his wife, he heard shots fired.

The club owner, Edna Locklear, saw defendant trap the seated Jeanie against a table and pull a pistol from his boot. Defendant threatened Locklear with the pistol, then, placing it three inches from Jeanie's stomach, fired either two or three shots. Immediately, defendant wrapped a hand in his victim's hair, pulling her out of her chair. Backing her against a wall, defendant brandished his pistol at the crowd of 215 to 220 persons, threatening to kill any who came to Jeanie's rescue. After holding the crowd at bay for a period of time (estimates varied), witnesses heard defendant tell Jeanie, "You don't do me like that." Though slumped over, she looked up at him, saying, "I'm sorry." In response, defendant aimed his pistol at her head and pulled the trigger. Jeanie jerked her head backwards, and the pistol round struck her in the shoulder.

At that moment, James Stewart, a club patron, leaped from the crowd and grabbed defendant. Four other patrons joined him

and, in the struggle for the pistol, Stewart was shot in the side. Finally, the five were able to trap defendant against a large wooden door until police arrived. When Ms. Locklear asked defendant if he realized that he might have killed the girl, defendant replied, "I meant to kill the s—-of-a-b——."

Police found five spent shell casings near the dance floor. The pistol, identified as a .25-caliber automatic, contained no live rounds. Two of the three projectiles removed from Jeanie's body were examined and found to have been fired from defendant's pistol. Despite emergency surgery, Jeanie died of massive bleeding resulting from two abdominal wounds and a third wound to the shoulder. Stewart suffered a single wound to the abdominal area. Surgeons were unable to remove the bullet lodged in Stewart's body.

Defendant was seen drinking prior to the shooting, but witnesses testified that he was not intoxicated. Defendant offered no evidence during the guilt phase of the trial. After deliberating only a short period of time, the jury returned a verdict finding defendant guilty of first-degree murder.

Following a sentencing hearing, the jury found two aggravating circumstances: that defendant had previously been convicted of a felony involving the use of violence to the person, N.C.G.S. § 15A-2000(e)(3) (1988), and that the murder was part of a course of conduct that included crimes of violence against other persons, N.C.G.S. § 15A-2000(e)(11) (1988). Of ten mitigating circumstances submitted, the jury found six to be present. On finding that the mitigating circumstances were not sufficient to outweigh the aggravating circumstances and that the aggravating circumstances were sufficiently substantial to call for the death penalty, the jury recommended a sentence of death.

JURY SELECTION ISSUES

[1] The prosecutor tried this case at a time when racial tensions in Robeson County were particularly high due to the recent shooting by a Robeson County Sheriff's Deputy of a man known locally as an "Indian activist." Defendant assigns as error questions directed by the prosecutor to Indian prospective jurors regarding their perceptions of racism in the criminal justice system. Though the prosecutor informed the prospective jurors that the victim, as well as the defendant, was Indian, these jurors indicated that racism might be motivating this prosecution. The prosecutor peremptorily chal-

lenged those Indian jurors who expressed this view and others who indicated they might have adopted it. The State, as well as defendant, is entitled to a fair trial. *State v. Artis,* 325 N.C. 278, 295, 384 S.E.2d 470, 479 (1989), *cert. granted and judgment vacated on other grounds,* --- U.S. ---, 108 L. Ed. 2d 604 (1990). The challenged line of questioning was a permissible effort to determine whether prospective jurors' perceptions of the trial process would affect their ability to render a fair verdict. *See, e.g., United States v. Mitchell,* 877 F.2d 294, 302 (4th Cir. 1989) (no impermissible use of peremptory challenge where juror had strong negative reaction to press reports of previous racist comments regarding case).

[2]  Defendant further asserts that the prosecutor impermissibly exercised peremptory challenges to exclude potential jurors on the basis of race. *See Batson v. Kentucky,* 476 U.S. 79, 90 L. Ed. 2d 69 (1986). Under *Batson,* a defendant makes out a prima facie case of purposeful discrimination in the selection of the petit jury if he shows: (1) he is a member of a cognizable racial minority, (2) members of his racial group have been peremptorily excused, and (3) racial discrimination appears to have been the motivation for the challenges. *Id.* at 96, 90 L. Ed. 2d at 87-88. When a defendant makes out a *prima facie* case, the burden of production "shifts to the State to come forward with a neutral explanation" for each peremptory strike. *Id.* at 97, 90 L. Ed. 2d at 88. This rebuttal of the prima facie showing must be a " 'clear and reasonably specific' " explanation "related to the particular case to be tried." *Id.* at 98 & n.20, 90 L. Ed. 2d at 88 & n.20 (quoting *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 258, 67 L. Ed. 2d 207, 218 (1981) ).

Following the prosecutor's rebuttal, the defendant has a right of surrebuttal to show that the prosecutor's explanations are a pretext. *State v. Greene,* 324 N.C. 238, 240, 376 S.E.2d 727, 728 (1989); *see also Stanley v. State,* 313 Md. 50, 62, 542 A.2d 1267, 1272-73 (1988); *State v. Antwine,* 743 S.W.2d 51, 64 (Mo. 1987) (en banc), *cert. denied,* 486 U.S. 1017, 100 L. Ed. 2d 217 (1988). Of course, the defendant has no right to examine the prosecuting attorney in the effort to show that the prosecutor's explanations are a pretext. *State v. Jackson,* 322 N.C. 251, 258, 368 S.E.2d 838, 842 (1988), *cert. denied,* --- U.S. ---, 104 L. Ed. 2d 1027 (1989).

Courts have analyzed closely the use of Title VII cases cited in *Batson,* 476 U.S. at 95, 98, 90 L. Ed. 2d at 87, 88-89, to conclude that the ultimate burden of persuading the court that intentional

STATE v. PORTER

[326 N.C. 489 (1990)]

racial discrimination has guided the use of peremptory challenges rests on the defendant. *United States v. Mathews*, 803 F.2d 325, 330 (7th Cir. 1986), *rev'd on other grounds*, 485 U.S. 58, 99 L. Ed. 2d 54 (1988); *Stanley v. State*, 313 Md. at 61, 542 A.2d at 1272. Because the trial judge's findings "largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference." *Batson v. Kentucky*, 476 U.S. at 98 n.21, 90 L. Ed. 2d at 89 n.21.

Several courts have identified factors to which the judge should refer in assessing whether these articulated reasons are legitimate or a pretext. First, the judge should consider " 'the susceptibility of the particular case to racial discrimination.' " *State v. Antwine*, 743 S.W.2d at 65 (quoting *State v. Butler*, 731 S.W.2d 265, 269 (Mo. App. 1987) ). The race of the defendant, the victims, and the key witnesses bears upon this determination. Second, the judge should consider the prosecutor's demeanor to determine whether the prosecutor is "engaging in a careful process of deliberation based on many factors." *United States v. Mathews*, 803 F.2d at 332. Third, the court should " 'evaluate the explanation itself.' " *State v. Antwine*, 743 S.W.2d at 65 (quoting *State v. Butler*, 731 S.W.2d at 269).

Evaluation of the prosecutor's explanation involves reference to objective and subjective criteria. *Stanley v. State*, 313 Md. at 79, 542 A.2d at 1281. The trial judge should consider whether "similarly situated white veniremen escaped the State's challenges" and "the relevance of the State's justification" to the case at trial. *State v. Antwine*, 743 S.W.2d at 65. We have held that to rebut a prima facie challenge, the State may proffer reasons that show it exercised its peremptory challenges in pursuit of a jury that is "stable, conservative, mature, government oriented, sympathetic to the plight of the victim, and sympathetic to law enforcement crime solving problems and pressures." *State v. Jackson*, 322 N.C. at 257, 368 S.E.2d at 840. These reasons "need not rise to the level justifying exercise of a challenge for cause." *Batson v. Kentucky*, 476 U.S. at 97, 90 L. Ed. 2d at 88. So long as the motive does not appear to be racial discrimination, the prosecutor may exercise peremptory challenges on the basis of "legitimate 'hunches' and past experience." *State v. Antwine*, 743 S.W.2d at 65.

The trial judge should evaluate the explanation "in light of the explanations offered for the prosecutor's other peremptory

strikes" and "the strength of the prima facie case." *Gamble v. State*, 257 Ga. 325, 327, 357 S.E.2d 792, 795 (1987). In assessing the "entire milieu of the voir dire," the judge must "compar[e] his observations and assessments of veniremen with those explained by the State," guided by his personal experiences with voir dire, trial tactics and the prosecutor and by any surrebuttal evidence offered by the defendant. *State v. Antwine*, 743 S.W.2d at 65.

[3] In the trial *sub judice*, the prosecutor waived argument as to whether a prima facie case existed. Where defendant is an American Indian, people of this heritage are a racial group cognizable for *Batson* purposes. *United States v. Iron Moccasin*, 878 F.2d 226, 229 (8th Cir. 1989); *United States v. Chalan*, 812 F.2d 1302, 1314 (10th Cir. 1987). The State used ten of thirteen peremptory challenges against Indian prospective jurors. Given the prosecutor's waiver, the trial court properly required the prosecutor to explain his use of peremptory challenges.

The prosecutor gave an individual explanation for each peremptory challenge of an Indian venireperson. Many of the peremptorily challenged venirepersons knew either one or both of the defense attorneys. The challenged potential jurors formed these acquaintanceships through attorney-client representation, as a schoolmate, as a student of one of the defense attorneys, or socially. Additionally, a challenged juror was related by marriage to one of defendant's counsel and said that this would "probably" influence her in rendering a decision. Several had been prosecuted for driving while intoxicated, and there was a history of unemployment or unsteady employment among others.

> Courts properly have held that there is nothing discriminatory about challenging jurors who express doubts concerning their ability to be fair or who do not appear to understand legal rules. Courts commonly allow prosecutors to challenge venirepersons who have criminal records or relatives with criminal records, and similarly prospective jurors who know the defendant, counsel or the family of either.

Raphael, *Discriminatory Jury Selection: Lower Court Implementation of Batson v. Kentucky*, 25 Willamette L. Rev. 293, 320-21 (1989) (citations omitted). The trial court committed no error in passing these proffered explanations.

STATE v. PORTER

[326 N.C. 489 (1990)]

As regards a particular challenged potential juror, Paul Bryant, the prosecutor challenged Bryant because one of the defense attorneys represented Bryant's girlfriend, and Bryant had been a defense witness for the same attorney. Bryant made constant eye contact with defense counsel, had majored in sociology, and read Rolling Stone magazine, all of which the prosecutor felt was reason enough to challenge the venireperson. Failure to make appropriate eye contact with the prosecutor when coupled with other reasons can be a legitimate reason to peremptorily challenge a prospective juror. *United States v. Terrazas-Carrasco*, 861 F.2d 93, 94 (5th Cir. 1988); *United States v. Cartlidge*, 808 F.2d 1064, 1071 (5th Cir. 1987); *State v. Tubbs*, 155 Ariz. 533, 537-38, 747 P.2d 1232, 1236 (1987). Excessive eye contact with defense counsel when coupled with other reasons can be an equally legitimate reason. Mr. Bryant's college major and reading habits indicated a point of view which the State could legitimately conclude was against the State. The trial judge could properly conclude that the State's explanation in this case was not a pretext.

Another challenged juror was a friend of Bryant's and had relied upon him to explain the meaning of aggravating and mitigating circumstances. Moreover, the venireperson seemed to accept the view that racism was present in this case. The final venireperson also seemed to have adopted the view that racism was involved and, in addition, was related by marriage to the excused prospective juror, Bryant. As we stated earlier in this opinion, a prosecutor legitimately excuses a prospective juror who believes the criminal justice system is operating unfairly before any facts have been presented.

Though not dispositive, it is relevant that the impaneled jury consisted of four Indians, four Blacks, and four Whites, mirroring exactly the racial composition of Robeson County. Other relevant factors are that the victim and both defense counsel, as well as the defendant, were Indian. Defense counsel peremptorily challenged two Indian prospective jurors. After the prosecutor defended his peremptory challenges and brought these relevant factors to the attention of the trial court, the trial court ruled that there was "no discrimination against the Indian race on the part of the State in the selection of the jury." We find no error in the conclusion of the trial court.

Defendant argues on appeal that the criteria articulated by the prosecutor were disparately applied to excuse Indian jurors only. Defendant asserts that the prosecutor passed other jurors acquainted with the defense counsel, formerly represented by the defense counsel or having unsteady job histories. Defendant argues further that the prosecutor did not pose the same questions to all jurors. However, at trial defendant "made no attempt to show that such explanations were 'merely pretextual.'" *Glenn v. State*, 754 S.W.2d 290, 291 (Tex. App. 1988). "Defense counsel was apparently satisfied with the explanations because no effort was made by the defense to demonstrate that the [S]tate's explanations were merely pretextual." *State v. Lemansky*, 780 S.W.2d 128, 131 (Mo. App. 1989). Because the trial judge is a finder of fact, we are not willing to substitute our judgment where the record discloses sufficient evidence to support his findings. *State v. Fennell*, 307 N.C. 258, 264, 297 S.E.2d 393, 396 (1982); *see also State v. Fowler*, 758 S.W.2d 99, 100 (Mo. App. 1988); *Tompkins v. State*, 774 S.W.2d 195, 202 & n.6A (Tex. Crim. App. 1987), *aff'd per curiam by an equally divided court*, --- U.S. ---, 104 L. Ed. 2d 834, *reh'g denied*, --- U.S. ---, 106 L. Ed. 2d 630 (1989).

Moreover, the alleged disparate treatment of prospective jurors would not be dispositive necessarily. Choosing jurors, more art than science, involves a complex weighing of factors. Rarely will a single factor control the decision-making process. Defendant's approach in this appeal involves finding a single factor among the several articulated by the prosecutor as to each challenged prospective juror and matching it to a passed juror who exhibited that same factor. This approach fails to address the factors as a totality which when considered together provide an image of a juror considered in the case undesirable by the State. We have previously rejected this approach. *State v. Jackson*, 322 N.C. at 256-57, 368 S.E.2d at 841. "[M]erely because some of the observations regarding each stricken venireperson may have been equally valid as to other members of the venire who were not challenged [does not] require[ ] . . . finding the reasons were pretextual." *State v. Lemansky*, 780 S.W.2d at 131. "A characteristic deemed to be unfavorable in one prospective juror, and hence grounds for a peremptory challenge, may, in a second prospective juror, be outweighed by other, favorable characteristics." *People v. Mack*, 128 Ill. 2d 231, 239, 538 N.E.2d 1107, 1111 (1989), *cert. denied*, --- U.S. ---, 107 L. Ed. 2d 1072, *reh'g denied*, --- U.S. ---, 108 L. Ed. 2d 969 (1990); *accord United*

STATE v. PORTER

[326 N.C. 489 (1990)]

*States v. Mathews*, 803 F.2d at 331. Our review of the record on voir dire reveals that any disparate treatment that may have occurred was not the result of a racially discriminatory motivation.

Defendant also urges that the failure of the trial court to make specific findings of fact renders invalid the conclusion that no discriminatory purpose was involved. Such findings are not necessary when there is no *material* conflict in the evidence. In this case, the trial court requested that the prosecutor articulate his reasons for dismissal and listened to defendant's arguments before rendering its conclusion. Defendant's arguments established no material conflict in the evidence. *See People v. Mack*, 128 Ill. 2d at 245, 538 N.E.2d at 1114 (upholding trial court finding of no *Batson* violation despite failure to enter specific findings of fact, where there was "no real contest as to the facts"); *State v. Lemansky*, 780 S.W.2d at 131 (court statement that "explanations were not insubstantial and the strikes were not made solely out of race motivation" sufficient to support finding of no *Batson* violation).

Defendant asserts further that the trial judge did not fully understand the law when concluding that the prosecutor had no racially discriminatory motive. Defendant refers specifically to a pretrial order which the court made in response to defendant's motion to prohibit the prosecutor from peremptorily challenging any Indian person. The trial court directed the prosecutor "not to excuse peremptorily jurors purely because of their race." We upheld denial of a similar motion in *State v. Mitchell*, 321 N.C. 650, 655, 365 S.E.2d 554, 557 (1988), and do so again today. We have no reason to believe the trial court failed to undertake a proper examination of the prosecutor's explanations. Consequently, we find no violation of *Batson* arising from any peremptory challenge of Indian prospective jurors by the State.

[4] Defendant next complains that the trial judge improperly ejected prospective juror Bryant from the gallery, violating defendant's right to a public trial under the North Carolina Constitution. N.C. Const. art. I, § 18; *In re Nowell*, 293 N.C. 235, 249, 237 S.E.2d 246, 255 (1977). After being peremptorily excused, Bryant remained in the courtroom gallery and advised at least one prospective juror on the meaning of aggravating and mitigating circumstances. On learning this, the trial judge asked Bryant why he remained in the courtroom. The trial judge then told Bryant firmly, "You are

excused." Assuming that defendant is correct in characterizing this exchange as an ejection from the courtroom and assuming arguendo that defendant did not waive the assignment when he failed to object at trial, we find no error in the trial judge's removal of Bryant from the courtroom.

[5] Defendant next excepts to the prosecutor's repeated statements during jury selection that the death penalty was the central question. Defendant failed to object at trial. Defendant relies upon *State v. Smith*, 279 N.C. 163, 181 S.E.2d 458 (1971), in which the prosecutor told the jury, among other things, "I know when to ask for the death penalty and when not to." *Id.* at 165, 181 S.E.2d at 459. Unlike the egregious instances cited in *Smith*, the prosecutor in this case did not interject an opinion of the case. The prosecutor merely stated what the jury already knew—that the case potentially involved the death penalty—and therefore the sentence was of primary importance. We find no error.

[6] Defendant next objects to the prosecutor's question raised to each juror prior to impaneling, "[D]o you feel that you personally can be a part of the legal machinery which might bring [the death penalty] about [in this case]?" Defendant claims this metaphor diminished the individual jurors' sense of responsibility for their sentencing decision. In *State v. Oliver*, we upheld a question by the prosecutor asking whether a juror had "the backbone to be a part of the machinery" imposing the death penalty. *State v. Oliver*, 309 N.C. at 355, 307 S.E.2d at 323. As in *Oliver*, the prosecutor's questions here when taken in context "were made not to badger or intimidate," but to determine whether the jurors "could comply with the law." *Id.* We find no error in this question.

*Caldwell v. Mississippi*, 472 U.S. 320, 86 L. Ed. 2d 231 (1985), and *State v. Jones*, 296 N.C. 495, 251 S.E.2d 425 (1979), cited by the defendant, are not apposite. In those cases, the prosecutor minimized the jury's responsibility for the decision to impose death by making reference to the defendant's right of appeal. In the case at hand, the prosecutor's question emphasized each juror's personal participation in the decision-making process. There was no error.

GUILT PHASE ISSUES

[7] Defendant argues in his next assignment of error that the cumulative effect of three separate errors effectively excluded second-

degree murder from the consideration of the jury. At issue are an unobjected-to statement made during the prosecutor's closing argument, a sustained objection to the defendant's closing argument, and an unobjected-to instruction on second-degree murder which defendant feels is cursory.

The prosecutor argued in his closing argument:

Now let me tell you something. The law requires the Judge sitting up there to charge you on a lesser included offense in this case. This defendant is charged with murder in the first degree. The Judge by law must also charge you on the possibility of a verdict of second degree murder.

Let me tell you at the outset, the State's position in this matter. This defendant sitting over here is guilty of first degree murder or he is guilty of nothing. He is guilty of premeditated deliberate murder or he is guilty of nothing. If you can't find him guilty of murder in the first degree, for God sakes [sic] turn him loose because all the evidence of first degree murder is here.

Defendant's counsel during closing argument stated to the jury:

You have a horrendous decision to make. A decision that will involve the question of first degree murder, or the question of second degree murder. The reason for not guilty. The reason that you have been presented with these three possible [sic] is because His Honor in light of the law believes that you as jurors—

The trial court sustained the prosecutor's objection to this argument. Defendant notes further that the trial judge's instruction on first-degree murder greatly exceeded the time the judge spent instructing on second-degree murder.

We hold that no error occurred as to each individual assignment. "The District Attorney here specifically advocated a decision based on the evidence." *State v. Hogan*, 321 N.C. 719, 724, 365 S.E.2d 289, 291 (1988). The trial judge properly prohibited that part of defendant's argument that referred to what the trial judge believed. *See* N.C.G.S. § 15A-1222 (1983). Finally, the judge's charge on second-degree murder was a correct statement of the law in accordance with *State v. Fleming*, 296 N.C. 559, 562, 251 S.E.2d 430, 432 (1979). Just as the mere fact that the judge may spend

more time summarizing the *evidence* for the State does not amount to an expression of opinion, *State v. Rinck*, 303 N.C. 551, 563, 280 S.E.2d 912, 921 (1981), no expression of opinion arises merely from the comparative amount of time devoted to giving an *instruction*. Where there was no error as to any individual part, we find no error in the whole.

[8] Defendant next complains of the trial judge's instruction on malice. The court stated that malice "may be shown by evidence of ill-will or dislike or hatred, and it is implied in law from the killing with a deadly weapon." The court peremptorily instructed that a .25-caliber weapon is a deadly weapon. Defendant asserts that this instruction relieved the State of the burden of proof of each element of the offense of murder. *See State v. Hankerson*, 288 N.C. 632, 643, 220 S.E.2d 575, 584 (1975), *rev'd on other grounds*, 432 U.S. 233, 53 L. Ed. 2d 306 (1977). Defendant made no objection to this instruction at trial, so we analyze this assignment according to the plain error standard. *See State v. Oliver*, 309 N.C. 326, 307 S.E.2d 304.

"The mandatory presumption is simply a way of stating our legal rule that in the absence of evidence of mitigating or justifying factors all killings accomplished through the intentional use of a deadly weapon are deemed to be malicious and unlawful." *State v. Hankerson*, 288 N.C. at 650, 220 S.E.2d at 588. There was no evidence of provocation on the part of Jeanie Brooks. Hence, the instruction did not relieve the State of its burden of proof. There was no plain error in this instruction.

[9] Defendant next takes exception to the trial court's instruction on first-degree murder. We apply the plain error standard as defendant failed to object at trial. Moreover, "it is fundamental that the charge of the court will be construed contextually, and isolated portions will not be held to constitute prejudicial error when the charge as a whole is free from objection." *State v. Hutchins*, 303 N.C. at 346, 279 S.E.2d at 803. The court instructed the jury that it could consider "evidence relating to expressed malice" as evidence tending to show premeditation and deliberation. Defendant fears that the jury erroneously believed it could use malice itself to establish premeditation and deliberation and that it used the presumption arising from the use of the pistol to infer this malice. Thus, argues defendant, the jury could have convicted him of first-

degree murder without ever having found the separate elements of premeditation and deliberation. We disagree.

The judge previously instructed the jury that the element of malice included hatred or ill-will. In stating that the jury could consider "evidence relating to expressed malice" to determine the existence of premeditation and deliberation, the judge stated that threats, the manner of killing, and defendant's declarations were proper for the jury's consideration of premeditation and deliberation. In this case, there was evidence relevant to all three elements. Defendant allegedly stated that he would kill Jeanie before the night was over and that he would shoot her if she played him for a fool. Based on the evidence presented, there was no plain error in the judge's instructions when taken as a whole.

Furthermore, there was no error in permitting the jury to consider evidence of defendant's conduct after the killing. Such conduct included a statement that he had intended to kill Jeanie Brooks. *See State v. Chavis*, 231 N.C. 307, 311, 56 S.E.2d 678, 681 (1949).

[10] Defendant argues further that the trial court improperly instructed the jury on provocation. Defendant concedes that verbal abuse or suspicions of adultery are not sufficient, of themselves, to reduce a crime from murder to manslaughter. *State v. Montague*, 298 N.C. 752, 757, 259 S.E.2d 899, 903 (1979) (verbal provocation); *State v. Ward*, 286 N.C. 304, 313, 210 S.E.2d 407, 413-14 (1974) (adultery), *judgment vacated in part*, 428 U.S. 903, 49 L. Ed. 2d 1207 (1976). However, defendant argues that such provocation can be sufficient to negate evidence of deliberation and thus reduce a crime from first-degree murder to second-degree murder. *See* Annot. "Insulting words as provocation of homicide or as reducing the degree thereof," 2 A.L.R.3d 1292, 1308 § 7 (1965 & Cum. Supp. 1989). Assuming, without deciding, that this is a correct statement of the law of this state, we find that it does not apply to this case. Wanting to dance with a person not one's beau does not rise to the level of insult, vilification, or indecent or abusive language that underpins the cases on which defendant relies. Mere jealousy, without more, cannot be sufficient to negate deliberation. *See State v. Eaton*, 154 S.W.2d 767 (Mo. 1941) (there was no provocation sufficient to negate deliberation though the deceased, who had been keeping company with defendant, refused to have anything more to do with him and later spoke the words "I don't want

to go with you"); *see also State v. Ward*, 286 N.C. at 313, 210 S.E.2d at 414 (refusing to extend the exculpatory features of *crime passionel* to the killing of a mistress).

[11] Defendant next takes exception to those portions of the prosecutor's closing argument on guilt that described the elements of premeditation and deliberation. Defendant failed to object at trial.

Our inspection of the prosecutor's argument reveals no distorting statement of the law. The prosecutor stated that deliberation meant a "cold blooded murder" and that it did not include the case where a man comes home and "finds his wife shacked up there with somebody." Such an example offered for the sake of comparison was not so grossly improper as to require the trial court to intervene *ex mero motu. State v. Robbins*, 319 N.C. 465, 523-24, 356 S.E.2d 279, 314, *cert. denied*, 484 U.S. 918, 98 L. Ed. 2d 226 (1987).

The prosecutor also argued that defendant's statement, "I meant to kill the s---of-a-b----," after defendant "pumped three rounds into the body of Jeanie Brooks" was evidence of premeditation and deliberation. This being a correct statement of the law, *State v. Chavis*, 231 N.C. at 311, 56 S.E.2d at 681, supported by the evidence, *State v. Hogan*, 321 N.C. at 724, 365 S.E.2d at 291, we find no error in this argument.

[12] In his final assignment of error in the guilt phase, defendant asserts that the trial court should have intervened to curb the prosecutor's argument that the victim's "family sitting there doesn't have anybody to turn to but you. . . . You are the body of society today. You are the body of Robeson County today. And you are the only people that society can turn to today." Defendant made no objection to this argument at trial.

> This Court has stressed that a jury's decision "must be based solely on the evidence presented at trial and the law with respect thereto, and not upon the jury's perceived accountability to the witnesses, to the victim, to the community, or to society in general." *State v. Boyd*, 311 N.C. 408, 418, 319 S.E. 2d 189, 197 (1984), *cert. denied*, 471 U.S. 1030, 85 L.Ed. 2d 324 (1985). Such arguments are not appropriate in the guilt phase of the trial, in which the jury's focus is properly upon guilt or innocence, not upon mercy, prejudice, pity or fear.

*State v. Brown,* 320 N.C. 179, 195-96, 358 S.E.2d 1, 13, *cert. denied,* 484 U.S. 970, 98 L. Ed. 2d 406 (1987). We conclude that the remarks here, like those in *Brown,* had no effect on the jury's verdict where the evidence of the defendant's guilt was so overwhelming.

### SENTENCING PHASE ISSUES

[13] Defendant took the stand in the sentencing phase against the advice of his attorneys. Following his testimony, the State cross-examined the defendant regarding prior convictions more than ten years old. These convictions and dates of judgment were:

1. unlawful possession of whiskey for purposes of resale (1950)

2. transporting whiskey (1953)

3. selling a pistol without a permit (1961)

4. assault on an officer (1964)

5. carrying a concealed weapon (1969)

6. assault (1970)

7. assault (1971)

8. possession of a deadly weapon (1971)

9. assault (1973)

10. assault (1976)

There was no evidence establishing whether these old convictions were felonies or misdemeanors. The jurisdictions making these judgments included Maryland and New York. Defendant put on no evidence to support the mitigating circumstance that he had no significant history of prior criminal activity prior to the cross-examination nor subsequent to it, nor did the trial judge charge the jury on the circumstance. Previous to the cross-examination, the State introduced evidence of prior convictions of murder and assault to support the aggravating circumstance of a prior felony involving violence to the person.

N.C.G.S. § 15A-2000(e)(3) sets out that previous convictions of "a felony involving the use or threat of violence to the person" are an aggravating circumstance for consideration by the jury. There is no doubt that three and arguably five of these convictions did not involve the threat or use of violence. It is not at all clear which, if any, of these convictions were felonies. Thus, these convic-

tions were not admissible for the purpose of establishing the aggravating circumstance set out in N.C.G.S. § 15A-2000(e)(3). *State v. Brown*, 315 N.C. 40, 63, 337 S.E.2d 808, 825 (1985), *cert. denied*, 475 U.S. 1165, 90 L. Ed. 2d 733 (1986), *overruled in part on other grounds, State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988).

Rule 609 of the Rules of Evidence permits the introduction of convictions more than ten years old for the limited purpose of impeachment if two requirements are first met. First, the court must determine that the probative value of the convictions, supported by specific facts and circumstances, outweighs the prejudicial effect of introduction. Second, the State must give "sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence." N.C.G.S. § 8C-1, Rule 609(b) (1986). The State concedes that "the record does not indicate that the prosecutor gave the notice required." Nor is there any indication that the judge indulged in the weighing process despite timely objection from the defendant.

We have held that evidence of bad character is admissible to rebut evidence of good character presented by a defendant for the purpose of establishing a mitigating circumstance. However, such evidence of bad character is not admissible in the State's case-in-chief. *State v. Silhan*, 302 N.C. 223, 273, 275 S.E.2d 450, 484 (1981). Moreover, it is error to admit rebuttal evidence prior to evidence offered to support the circumstance. *State v. Taylor*, 304 N.C. 249, 276, 283 S.E.2d 761, 778-79 (1981), *cert. denied*, 463 U.S. 1213, 77 L. Ed. 2d 1398, *reh'g denied*, 463 U.S. 1249, 77 L. Ed. 2d 1459 (1983). We hold that admission of these convictions under these circumstances was error.

The State argues that defendant's responses to questions regarding these convictions rendered any error harmless. These responses variously consisted of admissions, denials, protestations of forgetfulness, and inartful attempts to explain the circumstances of conviction. Defendant's responses came after the trial court overruled the defense counsel's objections. By virtue of these explanations, the State says defendant suffered no prejudice.

In *Taylor*, this Court held that admitting evidence of prior convictions for the purposes of rebutting a mitigating circumstance of no significant history of prior convictions was improper when admitted in the State's case-in-chief. *State v. Taylor*, 304 N.C. at

STATE v. PORTER

[326 N.C. 489 (1990)]

276, 283 S.E.2d at 778-79. We held that such admission was harmless, however, because "much of the testimony objected to . . . also was competent as evidence of [various] aggravating circumstances." *Id.* at 277, 283 S.E.2d at 779. This Court further found support for its conclusion in the fact that "the jury had before it all of the evidence offered at the guilt/innocence phase as well as the additional evidence presented at the sentencing phase." *Id.* at 278, 283 S.E.2d at 779.

In *Brown*, we also concluded no prejudicial error resulted from admission in the State's case-in-chief of evidence offered to rebut the mitigating circumstance that the defendant had no significant history of prior criminal activity. Though admission of this evidence out of turn was error, *State v. Brown*, 315 N.C. at 64, 337 S.E.2d at 826, such error was harmless. The error in this case was due to improper timing in the introduction of the evidence. *Id.* Defendant had admitted the existence of these convictions in the guilt/innocence phase without specifying the number of counts.

In the case before us, defendant presented no evidence of his good reputation. The State had already introduced its evidence of prior felonies, and defendant at no time tried to suggest that he had no significant history of prior criminal activity.

Defendant argues that prejudice occurred for at least two reasons. First, three of these convictions occurred prior to *Gideon v. Wainwright*, 372 U.S. 335, 9 L. Ed. 2d 799 (1963) (constitutional error to convict indigent defendant not offered representation of counsel). Defendant suggests that he may have been convicted without the assistance of counsel in these cases. Admission of prior convictions obtained in violation of the right to counsel for purposes of impeachment or to affect the length of sentence violates N.C.G.S. § 15A-980. A defendant may waive the right to suppress evidence of such convictions if he fails to make a motion to suppress. N.C.G.S. § 15A-980(b) (1986); *State v. Thompson*, 309 N.C. 421, 427, 307 S.E.2d 156, 160 (1983). Though defendant made no motion to suppress these convictions, he contends this failure was the direct result of the State's failure to comport with the notice requirements set out in Rule of Evidence 609(b).

Second, defendant contends that the cross-examination as to these prior convictions was prejudicial because the introduction of defendant's thirty-seven-year-old criminal record assured the jury that defendant was not capable of rehabilitation. Thus, the jury

could conclude that defendant was a fitting subject for the death penalty. We conclude that, under the circumstances of this case, the admission of these old convictions was error. Because we conclude that this error was prejudicial, we remand for a new sentencing hearing.

[14]  We address one other sentencing phase issue raised by defendant because it may recur on resentencing. Defendant asserts that it was error for the trial judge to fail to submit the defendant's age of sixty-one years as a mitigating circumstance. N.C.G.S. § 15A-2000(f)(7) (1988). Even had he requested that the trial judge submit this circumstance, which defendant did not, the evidence did not support offering it for the jury's consideration. We note parenthetically that we have not considered this issue in the context of advanced age. However, the cases considering the matter in the context of extreme youth are equally applicable. "[T]he chronological age of a defendant is not the determinative factor . . . ." State v. Oliver, 309 N.C. at 372, 307 S.E.2d at 333. Defendant asserts that his borderline I.Q. of seventy-one and his chronological age of sixty-one, combined, supported submission of the circumstance of his age to the jury. However, when balanced against defendant's youthful interest in the victim, his vigorous responses to the prosecutor's cross-examination, and his physical prowess in his attempts to escape, the evidence did not require submission of this circumstance.

We are cognizant of the recent decision in McKoy v. North Carolina, --- U.S. ---, 108 L. Ed. 2d 369 (1990), and its probable effect on the sentencing hearing in this case. However, as defendant is being awarded a new sentencing hearing for the reasons stated, we do not find it appropriate to discuss McKoy in this opinion.

Our review of the record on appeal indicates that defendant's other assignments of error are not likely to recur. For that reason, we do not address them.

In summary, our review of the record reveals no error in the guilt phase of the proceedings. However, in light of prejudicial error occurring in the sentencing phase, we vacate the sentence of death and remand for a new sentencing hearing.

Guilt Phase: No error.

Sentencing Phase: Death sentence vacated; remanded for new sentencing hearing.