STATE OF NORTH CAROLINA v. TIMOTHY TYRONE SESSOMS

No. 946SC354

(Filed 6 June 1995)

## Jury §§ 255, 259 (NCI4th)— *Batson* hearing—prosecutor on witness stand—justification of peremptory challenge

There was no error where a prosecution for conspiracy to traffic in cocaine had been remanded for a *Batson* hearing because the prosecutor had peremptorily challenged juror Beverly Askew, a black woman, after asking the clerk prior to his examination of Ms. Askew whether there was a white male in the venire; the prosecutor on remand took the witness stand and offered his explanation in a question and answer format without being sworn and without being subject to cross-examination; the explanation was that a deputy had told the prosecutor that Ms. Askew did not appear to be a leader, that she lived with people connected with drugs, and that the white male remaining in the pool would make a good leader; and the court found that the prosecutor's explanation was racially neutral. Defendant waived his right to argue the issue that the trial court erred by allowing the prosecutor to testify without first being sworn by failing to object after the prosecutor took the stand; under *State v. Jackson*, 322 N.C. 251, defendant had no right to cross-examine the prosecutor; and the prosecutor's proffered explanations for exercising the peremptory strike were not merely pretextual.

**Am Jur 2d, Jury § 244.**

1

**Use of peremptory challenge to exclude from jury persons belonging to a class or race. 79 ALR3d 14.**

Judge MARTIN concurs in the result only with a separate opinion.

Judge JOHNSON dissents.

Appeal by defendant from judgment entered 12 July 1990 by Judge Orlando Hudson in Hertford County Superior Court. Heard in the Court of Appeals 23 January 1995.

Defendant was convicted of two counts of conspiracy to traffick in cocaine on 12 July 1990. During jury selection, defendants objected twice under *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69 (1986). The first objection occurred immediately after the clerk called juror Beverly Askew. At that time the prosecutor asked the clerk if there was a white male out there, there being the venire. The second objection occurred after the prosecutor questioned and excused Askew. Each time the court determined that a prima facie showing of a *Batson* violation had not been made.

On appeal, we stated that "[s]tanding alone, the prosecutor's peremptory challenge of Askew would not amount to a prima facie showing of purposeful discrimination." *State v. Hall*, 104 N.C. App. 375, 383, 410 S.E.2d 76, 81 (1991). We concluded, however, that "[t]he prosecutor's question of the clerk prior to his examination of Askew . . . is a relevant circumstance which, when combined with the prosecutor's subsequent peremptory challenge of Askew, a black woman, raises an *inference* of purposeful discrimination on the prosecutor's part thereby establishing a prima facie showing." *Id.* (emphasis in original). We remanded for an evidentiary hearing to determine whether the prosecutor's explanation for his peremptory challenge of Askew was race-neutral.

On remand, Judge Hudson, who had presided over defendant's trial, presided over the *Batson* hearing. Debra Graves from the North Carolina Department of Justice represented the State. Before the State offered the prosecutor's explanation, the following colloquy took place:

[Ms. GRAVES]: So what we'd like to do is go ahead and . . . put Mr. Beard [the prosecutor] on the witness stand to state his explanation for the remark and his explanation for the excusal of Ms. Askew.

STATE v. SESSOMS

[119 N.C. App. 1 (1995)]

THE COURT: All right. And the parameters will be what, as far as what defense counsel can ask, if anything, first of all?

MS. GRAVES: Well, I don't believe that his attorney has any right to cross-examine the prosecutor.

THE COURT: Well, I don't either, that's why I asked you.

MS. GRAVES: North Carolina law does not permit that and we would not agree to it.

. . .

MR. WARMACK: . . . [w]hat I'm saying is in relation to the court's addressing the issue of my being able to cross-examine the district attorney, as to not what he said at that point in time, but presumably now he is going to take the stand and testify as to his reasons for excusing Ms. Askew.

THE COURT: Yeah.

MR. WARMACK: My position is that we would be entitled to cross-examine him because he is taking the witness stand as a witness under oath, not just standing up in front of the court saying this is why I did what I did.

THE COURT: I understand but I don't think that's a determining factor. The bottom line on it is some states let you do it, North Carolina is not one of those states. . . .

After more discussion, the prosecutor took the witness stand and offered his explanation in a question and answer format. He was not sworn, nor was he subjected to cross-examination.

The trial court found that the prosecutor's explanation was race-neutral. Defendant then offered the testimony of Luther Culpepper, a summer associate, and Rob Lewis and Larry Overton, attorneys at the original trial. The trial court found that the prosecutor's excusal of Askew was a legitimate use of a peremptory challenge and concluded defendant had not carried his burden of showing that the State's explanations were pretextual. Defendant appeals.

*Attorney General Michael F. Easley, by Assistant Attorney General Debra C. Graves, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Charles L. Alston, Jr., and Assistant Appellate Defender Benjamin Sendor, for defendant appellant.*

ARNOLD, Chief Judge.

Defendant contends the trial court erred by allowing the prosecutor to testify without first being sworn. Defendant waived his right to argue this issue, having failed to object after the prosecutor took the stand without being sworn. *State v. Robinson*, 310 N.C. 530, 313 S.E.2d 571 (1984) (holding that the failure to object at the appropriate time is fatal to defendant's argument).

Defendant also contends that the trial court erred in refusing to allow him to cross-examine the prosecutor. But defendant had no right to cross-examine the prosecutor. In *State v. Jackson*, our Supreme Court held unequivocally that "a defendant who makes a *Batson* challenge does not have the right to examine the prosecuting attorney. . . . The presiding judges are capable of passing on the credibility of the prosecuting attorneys without the benefit of cross-examination." *State v. Jackson*, 322 N.C. 251, 258, 368 S.E.2d 838, 842 (1988), *cert. denied*, 490 U.S. 1110, 104 L. Ed. 2d 1027 (1989). The Court added "[w]e know of no reason why the defendant should be allowed to examine a prosecuting attorney at a post trial hearing if he could not do so at trial." *Id; see also State v. Green*, 324 N.C. 238, 376 S.E.2d 727 (1989); *State v. Porter*, 326 N.C. 489, 391 S.E.2d 144 (1990).

Defendant relies on the fact that the prosecutor was positioned on the witness stand rather than counsel's table, and that he tendered his explanation in a question and answer format to distinguish *Jackson*. These facts do not change *Jackson's* clear holding, nor alter the reasoning behind that holding.

In *Hall* we determined that defendant met his burden of establishing a prima facie showing under *Batson*, and remanded for a *Batson* hearing to "determine whether the prosecutor's explanation for his peremptory challenge of Askew was race-neutral." *Hall*, 104 N.C. App. 375, 384, 410 S.E.2d 76, 81. At the time, the only "explanation" offered by the prosecutor came *before* he even questioned Askew. *After* excusing Askew, when defendant moved again under *Batson*, the prosecutor was not asked for, nor did he give, an explanation for excusing her. On remand he explained her excusal for the first time and, in doing so, restated and elaborated on his explanation for asking the clerk whether there was a white man out there.

The trial court did not err in accepting additional explanations. The prosecutor in this case has been accused of using a peremptory challenge in a racially discriminatory manner. He should not be pre-

vented from explaining why he excused Askew and more fully explaining his statements in general. His additional explanations do not reveal that his proffered explanations were merely pretextual.

In determining whether the prosecutor's explanations are legitimate or merely pretextual, the following is instructive:

> The State must rebut with a " 'clear and reasonably specific' explanation 'related to the particular case to be tried.' " This explanation need not rise to the level required to justify exercising a challenge for cause. . . . [J]ury selection is "more art than science," and "[s]o long as the motive does not appear to be racial discrimination, the prosecutor may exercise peremptory challenges on the basis of 'legitimate "hunches" and past experience.' "
>
> We have held that it is permissible for the district attorney to explain to the court prior to jury selection that he "wanted a jury that was 'stable, conservative, mature, government oriented, sympathetic to the plight of the victim, and sympathetic to law enforcement crime solving problems and pressures.' " We have also held that the ultimate racial makeup of the jury is relevant but not dispositive. Finally, . . . we have held that the State may rebut a charge of discrimination with evidence that the State accepted black jurors, that the State did not use all of its peremptory challenges, or that the early pattern of strikes does not indicate discriminatory intent.

*State v. Smith*, 328 N.C. 99, 124, 400 S.E.2d 712, 726 (1991) (citations omitted).

The prosecutor testified that Deputy Cowan told him that Askew did not appear to be a leader, and that she lived with people connected with drugs. Deputy Cowan also told the prosecutor that the white man remaining in the pool would make a good leader. The prosecutor explained that when Askew was called, his statement "was there a white man out there" was his attempt to distinguish the individuals remaining in the pool.

It seems obvious that the prosecutor had determined that he wanted the man whom Deputy Cowan had told him would make a good leader, and that he excused Askew, in reliance upon Deputy Cowan, in order to reach that man. Choosing the juror whom Deputy Cowan had indicated would make a good leader does not equate with discriminating against Askew on the basis of race. Judge Hudson

failed to see or hear anything racial or pretextual in the prosecutor's statements, and deference should be given to Judge Hudson's ruling.

We can only read the record and, of course, the written word must stand on its own. But the trial judge is present for the full sensual effect of the spoken word, with the nuances of meaning revealed in pitch, mimicry and gestures, appearances and postures, shrillness and stridency, calmness and composure, all of which add to or detract from the force of spoken words.

The trial judge's findings, therefore, which turn in large part on the credibility of the witnesses, must be given great deference by this Court. *Porter*, 326 N.C. 489, 391 S.E.2d 144. "Because the trial court [is] in the best position to assess the prosecutor's credibility, we will not overturn its determination absent clear error." *State v. Williams*, 339 N.C. 1, 17, 452 S.E.2d 245, 255 (1994). Under the standard articulated above, we see no clear error.

In addition, there is nothing inherently suspect in the prosecutor's statement that he relied on advice from Deputy Cowan in deciding to strike Askew. Prosecutors frequently rely on investigators and others familiar with members of the venire in conducting jury selection. *See State v. Martin*, 105 N.C. App. 182, 412 S.E.2d 134, *appeal dismissed and disc. review denied*, 331 N.C. 556, 418 S.E.2d 670 (1992) (prosecutor excused one juror because investigator did not like that the juror had never held a professional position and another, in part, because investigator did not like his body language and demeanor); *State v. McNeil*, 99 N.C. App. 235, 393 S.E.2d 123 (1990) (juror excused because veteran detective did not feel comfortable with him). The prosecutor was not required to test the accuracy of Cowan's advice by questioning Askew, nor was his failure to question her along those lines evidence that his explanations were merely pretextual. In fact, the man whom Deputy Cowan said would make a good leader was elected foreman by the jury.

Clearly the panel, as ultimately composed, is not indicative of discriminatory intent on the prosecutor's part to exclude black jurors. *See Porter*, 326 N.C. 489, 391 S.E.2d 144. When Askew was called to the box, eleven jurors already had been seated, eight of whom were black. The empaneled jury consisted of eight black jurors, four white jurors and three black alternates, which strongly belies any suggestion of discriminatory intent on the prosecutor's part.

**STATE v. SESSOMS**

[119 N.C. App. 1 (1995)]

How plausible is it that the prosecutor would use racially discriminatory tactics to exclude blacks where not only defendant, but Judge Hudson, Deputy Cowan, and two of the State's key witnesses were also black? If we may reason from inference, it was most unlikely. Common sense irresistibly indicates that it was not in this prosecutor's best interest to use discriminatory practices. *See Williams*, 339 N.C. 1, 17-18, 452 S.E.2d 245, 255 (stating "[t]hat a black witness played such a key role in defendant's prosecution substantially undercuts any incentive on the prosecutor's part to remove blacks on the basis of their race"); *Jackson*, 322 N.C. 251, 368 S.E.2d 838 (stating that court could consider that the prosecutor's key witness was black).

Moreover, as to defendant's contention that the prosecutor's explanation was clearly pretextual simply because he passed on other jurors with similar traits, we have long recognized that this strategy is of little use as it "fails to address the factors as a totality which when considered together provide an image of a juror· considered in the case undesirable by the State." *Porter*, 326 N.C. at 501, 391 S.E.2d at 152-153. Nor does the brevity of Askew's questioning suggests an improper intent to excuse her. Although it seems irrelevant, others were questioned similarly and also excused.

The order appealed from should be

Affirmed.

Judge MARTIN, Mark D., concurs in the result only with separate opinion.

Judge JOHNSON dissents with separate opinion.

Judge Mark D. Martin concurring in the result only.

The present appeal arises out of the hearing conducted by the trial court on remand, pursuant to *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69 (1986), to determine whether the prosecutor's explanation for his peremptory challenge of juror Beverly Askew was race-neutral. I write separately to express my belief that the procedures used at the hearing violated defendant's right to reciprocal fairness.

At the hearing all of defendant's witnesses, upon taking the witness stand, were required to take an oath and were subjected to cross-examination by the State. On the other hand, when the State's

only witness, the prosecutor, was called to the stand, he was not required to take an oath and was not subjected to cross-examination, despite the defendant's ultimate burden of proving the existence of purposeful discrimination. *See Batson v. Kentucky*, 476 U.S. at 98, 90 L. Ed. 2d at 88-89.

Defendant contends the trial court's differing treatment of the State's witness, as opposed to the defendant's witnesses, violated the defendant's right to reciprocal fairness. I agree. Like the majority, however, I believe the procedural aspects of this case are governed by the clear and unequivocal holding of our Supreme Court in *State v. Jackson*, 322 N.C. 251, 368 S.E.2d 838 (1988), *cert. denied*, 490 U.S. 1110, 104 L. Ed. 2d 1027 (1989).

Defendant argues persuasively that the trial court erred by failing to require the prosecutor to be sworn, and in addition, by refusing to allow the prosecutor to be cross-examined.

North Carolina courts have consistently held a defendant is entitled to have the testimony offered against him given under the sanction of an oath. *See, e.g., In re Byers*, 295 N.C. 256, 258, 244 S.E.2d 665, 667 (1978) ("it is well established that before a witness can testify he must swear or affirm to tell the truth"); *State v. Dixon*, 185 N.C. 727, 730, 117 S.E. 170, 172 (1923) ("defendant is entitled to have the testimony offered against him given under the sanction of an oath"); *State v. Davis*, 69 N.C. 383 (1873).

The North Carolina Rules of Evidence provide that: "[b]efore testifying, every witness shall be required to declare that he will testify truthfully, by oath or affirmation administered in a form calculated to awaken his conscience and impress his mind with his duty to do so." N.C.R. Evid. 603. A witness is one who is called to testify before a court. *Black's Law Dictionary* 1603 (6th ed. 1990). North Carolina Rule of Evidence 603 is applicable to all actions and proceedings of the court except where excluded by statute or North Carolina Rule of Evidence 1101(b). Neither statute nor Rule 1101(b) expressly exclude *Batson* hearings from the rules of evidence. Therefore, I believe it is clear that a prosecutor who voluntarily elects to take the witness stand, like any other witness, must be sworn before he or she testifies.

I believe the prosecutor in the instant case was serving in the capacity of a witness and should have been required to take an oath. The prosecutor requested Ms. Graves appear at the hearing on behalf

of the State. Ms. Graves "call[ed]" the prosecutor to the witness stand to give his explanation for the peremptory challenge. The prosecutor voluntarily took the witness stand and proceeded through direct examination to offer his explanation for the peremptory challenge. At one point during direct examination, defendant raised a hearsay objection, which the trial court overruled. All parties proceeded as if the prosecutor were an ordinary witness. At the end of Ms. Graves' direct examination of the prosecutor, defendant's attorney renewed his objection to the manner in which the hearing was conducted, and once again was overruled by the trial court.

Within the context of the present case, however, I agree with the majority opinion that the defendant waived his right to have the prosecutor sworn by failing to make any objection to the trial court's failure to administer an oath.

Defendant also contends the trial court erred in not allowing the prosecutor to be cross-examined.

In *State v. Jackson*, 322 N.C. 251, 368 S.E.2d 838 (1988), *cert. denied*, 490 U.S. 1110, 104 L. Ed. 2d 1027 (1989), our Supreme Court held defendant did not have the right to cross-examine the prosecuting attorney during a *Batson* hearing. The Court explained:

> In balancing the arguments for and against such an examination, we believe the disruption to a trial which could occur if an attorney in a case were called as a witness overbears any good which could be obtained by his testimony. We do not believe we should have a trial within a trial. The presiding judges are capable of passing on the credibility of prosecuting attorneys without the benefit of cross-examination.

*Id.* at 258, 368 S.E.2d at 842. The Court indicated this same rule would apply to the prosecutor appearing as counsel at a post-trial hearing. *Id.* The holding in *State v. Jackson* was followed in *State v. Green*, 324 N.C. 238, 376 S.E.2d 727 (1989).

The right of confrontation includes the right to cross-examine witnesses, *State v. Perry*, 210 N.C. 796, 797, 188 S.E. 639, 640 (1936), on any subject covered in their direct examination. *Id.* at 798, 188 S.E. at 640; *State v. Dixon, supra. Compare* N.C.R. Evid. 611(b) ("witness may be cross-examined on any matter relevant to any issue in the case, including credibility"). Indeed, the right of cross-examination is a common law right and is guaranteed by the North Carolina Constitution and the United States Constitution. *State v. Watson*, 281

N.C. 221, 232, 188 S.E.2d 289, 295, *cert. denied*, 409 U.S. 1043, 34 L. Ed. 2d 493 (1972); *State v. Bumper*, 275 N.C. 670, 674, 170 S.E.2d 457, 460 (1969).

During the *Batson* hearing Assistant Attorney General Debra Graves acted as counsel for the State. In order to explain why the prosecutor had excused Askew during *voir dire* examination, Ms. Graves "call[ed]" the prosecutor as a witness. Ms. Graves conducted a direct examination of the prosecutor. At one point during the direct examination of the prosecutor, defendant's attorney raised a hearsay objection which the trial judge overruled. Put simply, all parties behaved as if the prosecutor were an ordinary witness.

The State voluntarily elected to call the prosecutor to the witness stand and conducted direct examination. Arguably, the prosecutor "waived" his right under *State v. Jackson* to not be subjected to cross-examination by voluntarily taking the stand and subjecting himself to direct examination. Because the trial court subjected all of defendant's witnesses to cross-examination, I find the defendant's argument persuasive that this same procedure should have been followed when the State's only witness, the prosecutor, voluntarily elected to take the witness stand.

The reciprocal unfairness inherent where the prosecutor is not subjected to cross-examination has been recognized. In *Williams v. State*, 767 S.W.2d 872 (Tex. App. 1989), the Texas Court of Appeals held that in order to provide defendant with an opportunity to rebut the prosecutor's race-neutral explanation for exercising peremptory strikes, the accused should be permitted to cross-examine the prosecutor. *Id.* at 874. The *Williams* court reasoned that, "the denial or improper curtailment of cross-examination denies the accused the right to a fair trial." *Id.*

I believe the formulation of appropriate procedures to resolve *Batson* inquiries is generally best left in the sound discretion of the trial courts, see *United States v. Garrison*, 849 F.2d 103, 107 (4th Cir. 1988), *cert. denied*, 488 U.S. 996, 102 L. Ed. 2d 591 (1988); *United States v. Tucker*, 836 F.2d 334, 340 (7th Cir. 1987), *cert. denied*, 490 U.S. 1105, 104 L. Ed. 2d 1018 (1989), which must be allowed considerable discretion in conducting *Batson* hearings. *United States v. Davis*, 809 F.2d 1194, 1202 (6th Cir. 1987), *cert. denied*, 483 U.S. 1007, 97 L. Ed. 2d 740 (1987). Likewise, I believe it is clear a defendant is not absolutely entitled to an evidentiary hearing on a *Batson* objection in every case. *United States v. Tindle*, 860 F.2d 125 (4th Cir.

1988), *cert. denied*, 490 U.S. 1114, 104 L. Ed. 2d 1038 (1989); *United States v. Garrison*, 849 F.2d 103 (4th Cir. 1988).

Nevertheless, where the defendant makes a *prima facie* showing of purposeful discrimination in the selection of the jury, as this Court concluded in *Hall*, I believe fundamental reciprocal fairness mandates that all witnesses be treated equally at any evidentiary hearing conducted to determine whether the defendant has carried his ultimate burden of proving the existence of purposeful discrimination. Put simply, either all witnesses should be sworn and subjected to cross-examination, or no witness should be sworn and subjected to cross-examination. Otherwise we sanction procedures which derogate from longstanding fundamental principles of reciprocal fairness inherent within our adversarial system of justice. Nonetheless, I believe this Court is bound by our Supreme Court's clear and unequivocal holding in *State v. Jackson*. I therefore concur in the result of the majority opinion.

Judge JOHNSON dissenting.

I dissent from the majority opinion which holds that (1) defendant waived his right to argue the issue that the trial court erred by allowing the prosecutor to testify without first being sworn; (2) defendant had no right to cross-examine the prosecutor; and (3) the prosecutor's proffered explanations for exercising the peremptory strike of Ms. Askew challenged under *Batson* were not merely pretextual.

## (1) and (2)

At the *Batson* hearing, the State was represented by Debra Graves from the Attorney General's Office. After preliminary matters, the State prepared to proceed to give the prosecutor's explanation for his peremptory challenge of Askew, to-wit:

[THE STATE]: So what we'd like to do is go ahead and . . . put [the prosecutor] on the witness stand to state his explanation for the remark and his explanation for the excusal of Ms. Askew.

THE COURT: All right. And the parameters will be what, as far as what defense counsel can ask, if anything; first of all?

[THE STATE]: Well, I don't believe that his attorney has any right to cross-examine the prosecutor.

THE COURT: Well, I don't either, that's why I asked you.

[THE STATE]: North Carolina law does not permit that and we would not agree to it.

. . . [much discussion] . . .

[DEFENDANT'S ATTORNEY]: . . . [W]hat I'm saying is in relation to the court's addressing the issue of my being able to cross-examine the district attorney, as to not what he said at that point in time, but presumably now he is going to take the stand and testify as to his reasons for excusing Ms. Askew.

THE COURT: Yeah.

[DEFENDANT'S ATTORNEY]: My position is that we would be entitled to cross-examine him because he is taking the witness stand as a witness under oath, not just standing up in front of the court saying this is why I did what I did.

THE COURT: I understand but I don't think that's a determining factor. The bottom line on it is some states let you [cross-examine the prosecutor], North Carolina is not one of those states. . . .

. . .

THE COURT: [T]he mere fact that [the prosecutor] [is] not on the witness stand is irrelevant because if that were the determining factor, you could put him on the witness stand. I mean what stops you from putting him on the witness stand when he stands up and gives [his] explanation . . . [?] [The courts] say you can't do that.

After more discussion, the defense objected to the court allowing the State's attorney to call the prosecutor to the witness stand for direct examination but not subject to any cross-examination. The prosecutor was then called to the witness stand without being sworn. Ms. Graves proceeded to ask the prosecutor a series of questions which the prosecutor answered. During this direct examination, defendant's attorney raised an objection which was ruled upon by the trial judge. At the end of the colloquy, defendant's attorney renewed his objection.

The majority holds that because defendant at no point objected to the fact that the prosecutor was not sworn, defendant has waived his right to object to the prosecutor's unsworn explanation now. The majority cites *State v. Robinson*, 310 N.C. 530, 313 S.E.2d 571 for the proposition that a failure to object is fatal to an argument regarding the absence of an oath because it constitutes a waiver. This holding is a

circular one—if, as the State argued, the trial court ruled, and the majority holds, the prosecutor is not a witness, why would he have been sworn? Defendant objected when the trial judge stated that defendant would not be permitted to cross-examine the prosecutor. I believe that by objecting to the manner in which the prosecutor was being permitted to give his explanation, defendant preserved this argument for review by this Court.

I believe the first holdings of the majority I have referenced above can be resolved by a resolution of whether the prosecutor was serving as a witness by *voluntarily* taking the witness stand for the purpose of subjecting himself to direct examination. Defendant maintains that the prosecutor was "serving in the capacity of a witness" for the State because of the *manner* in which the prosecutor conveyed his explanation of the peremptory challenge, i.e., from the witness stand. On the other hand, the State argues that

> [t]he prosecutor did not intend to, and did not in fact, offer testimony in this case. He merely offered his explanation for excusing Ms. Askew. The explanation was given by way of a colloquy with Ms. Graves because, in light of the unusual posture of this hearing (on remand [three] years after the trial), the colloquy provided the best vehicle to inform the trial court on the record. This goal could have been accomplished through any number of procedures, including having the prosecutor to make a lengthy speech, or having the prosecutor to engage in the colloquy from his seat at the prosecutor's table.

After much review, several factors convince me that the prosecutor in the instant case was "serving in the capacity of a witness." Ms. Graves stated that she was at the hearing at the request of the prosecutor to represent the State in the *Batson* matter, although the prosecutor was also seated at the State's table. When the time came for the prosecutor to give his explanation, Ms. Graves announced to the trial court that she would like to "call" the prosecutor. The prosecutor voluntarily took the witness stand and proceeded, through a series of questions and answers, to offer his explanation for the peremptory challenge. At one point while the prosecutor was undergoing direct examination, defendant's attorney interrupted with an objection to one of Ms. Graves' questions, and the trial court overruled defendant's objection. At the end of the State's questioning, defendant's attorney renewed his objection, which the trial court denied. I believe that the manner in which the prosecutor's explanation took place put

the prosecutor in the position of a witness and that therefore, defendant should have been allowed to cross-examine the prosecutor at the conclusion of direct examination.

I recognize *State v. Jackson*, 322 N.C. 251, 258, 368 S.E.2d 838, 842 from which the majority quotes that "a defendant who makes a *Batson* challenge does not have the right to examine the prosecuting attorney[.]" In *Jackson*, as in the case *sub judice*, a *Batson* hearing was held after a trial on remand. Defendant's trial attorneys and the prosecutors stipulated what had happened at the trial. Defendant attempted to subpoena the prosecutors; these subpoenas were quashed and defendant appealed because of this assignment of error. Therefore, defendant was not allowed to put on evidence at the hearing. On appeal, the Court stated that the question raised by this particular assignment of error was "whether the defendant had the right to examine the prosecutors in a hearing to determine if there has been a *Batson* violation." *Id.* at 257, 368 S.E.2d at 841. The Court held that

> a defendant who makes a *Batson* challenge does not have the right to examine the prosecuting attorney. In balancing the arguments for and against such an examination, we believe the disruption to a trial which could occur if an attorney in a case were called as a witness overbears any good which could be obtained by his testimony. We do not believe we should have a trial within a trial. The presiding judges are capable of passing on the credibility of prosecuting attorneys without the benefit of cross-examination.

*Id.* at 258, 368 S.E.2d at 842. In so finding, the Court noted that "defendant could . . . have offered evidence to strengthen his case after the State had made its showing." *Id. Jackson* is distinguishable. The Court warns of the evil which "could occur *if an attorney in a case were called as a witness*[.]" For whatever reason, in the instant case, the prosecutor voluntarily allowed himself to be called as a witness, by the State. And once voluntarily subjecting himself as a witness, the prosecutor, under the circumstances of this case, was subject to cross-examination. The trial court in the instant case was of the belief that under no circumstances would the prosecutor be subject to cross-examination by the defense. However, I believe that by voluntarily taking the witness stand, the prosecutor waived the protection given him by *Jackson* prohibiting examination of him by the defense. He thereby subjected himself to cross-examination.

Therefore, I believe defendant's rights to due process and equal protection of the laws under the United States Constitution, the North Carolina Constitution, and the North Carolina Rules of Evidence have been violated because the prosecutor, as a witness, was permitted to testify during the hearing without first being sworn, and because defendant did not have the right to cross-examine the prosecutor. However, notwithstanding the trial court's erroneous rulings regarding the witness oath and cross-examination, the record is sufficient and abundantly clear for appellate review to decide the *Batson* issue.

(3)

Next, I address the majority's holding that the prosecutor's proffered explanations for exercising the peremptory strike of Ms. Askew challenged under *Batson* were not merely pretextual. In the first appeal of this case, *State v. Hall*, 104 N.C. App. 395, 410 S.E.2d 76, the only explanatory statement the prosecutor offered as his race-neutral explanation for his alleged discrimination was as follows:

> And as far as—my impression—my impression when I came up there, it was my impression there was a black juror and a white— and a white juror left in the jury panel and there was not a black female or a female at all left.
>
> I was trying to determine who—who was left. I had three left and two were—two were men and one was a woman, and I had— and apparently there were two women and one men—one man. And I had it backwards, and that's what I was trying to determine who was left as best I could.

*Id.* at 378-79, 410 S.E.2d at 78. This Court noted that the prosecutor's explanatory statement was not offered during the *voir dire* examination, but was made during the trial court's hearing on the *Batson* violation. This Court then stated:

> The prosecutor's statement may have adequately explained the meaning of his question [if "there was a white male out there"], but the trial court should have considered the statement, not for whether the defendant made a prima facie showing, but for whether the prosecutor adequately rebutted the [defendant's] prima facie showing.

*Id.* at 384, 410 S.E.2d at 81.

In that this Court concluded that the trial court did not consider the prosecutor's proffered race-neutral explanation for his alleged

discrimination in the proper context, the Court remanded the case to the trial level for a trial judge to determine

> whether the prosecutor's explanation [within the record] for his peremptory challenge of Askew was race-neutral. If the trial court finds that the prosecutor's explanation [within the record] was not race-neutral, [defendant] is entitled to a new trial. If the trial court finds that the prosecutor's explanation for his peremptory challenge was race-neutral, [defendant] shall be given an opportunity to demonstrate that the explanation was a mere pretext. If [defendant] meets his ultimate burden of proving purposeful discrimination, he is entitled to a new trial. If not, the trial court will order commitment to issue in accordance with the judgment appealed from and entered on 12 July 1990.

*State v. Hall*, 104 N.C. App. at 384, 410 S.E.2d at 81.

I take issue with the majority's statement that, in *Hall*, our Court remanded "for an evidentiary hearing" to determine whether the prosecutor's explanation for the peremptory challenge was race-neutral. The mandate in *Hall* was for the trial court to determine "whether the prosecutor's explanation [within the record] for his peremptory challenge of Askew *was* race-neutral." (Emphasis added.) It is clear in *Hall* that this Court did not intend for the trial court, on remand, to have the prosecutor restate and certainly not to embellish his prior explanatory statement for his alleged discrimination and peremptory challenge of Ms. Askew. The prosecutor had three years to consider the issue involved. In short, the *Hall* Court concluded that the trial court erred in not considering the prosecutor's statement in the proper context, that is, whether his explanatory statement adequately rebutted the prima facie case shown by defendant. The trial court had only considered it in the context of whether defendant had made out a prima facie case of discrimination. Because of that error, this Court remanded the case for the trial court to consider the prosecutor's statement of record in the proper context. Perhaps the prosecutor would have been better off not to have proffered additional explanatory statements three years later, that were never mentioned or even alluded to in the least, at the original trial when he gave his explanatory statement. A more appropriate time would have been at the time of the trial when the matters unquestionably should have been fresh in his memory. Attempting to restate his original explanation, which was of record, and giving additional explanatory statements, were

STATE v. SESSOMS

[119 N.C. App. 1 (1995)]

neither warranted by the prosecutor nor intended by this Court's remand.

As this Court noted in *Hall*, the prosecutor's *original* statement, considered in the proper context, may have adequately explained the meaning of his question, thereby refuting an inference of discrimination. However, on remand, the trial court conducted a full *Batson* hearing from beginning to end, resulting in not only the consideration of the prosecutor's original statement, but also his two additional explanatory statements. After considering the prosecutor's explanatory statements, the trial court found and concluded that the statements were race-neutral; that defendant had failed to carry his burden of showing that the prosecutor's explanations were pretextual; and that the prosecutor's excusal of Ms. Askew was a legitimate use of a peremptory challenge.

Now, we address the issue of whether purposeful discrimination occurred. It is interesting to note that the prosecutor's original explanatory statement was that he was trying, as best he could, to determine who was left in the jury pool; that it was his impression there was a black juror and a white juror left and that neither of the two was a female. The prosecutor further stated that it was his impression that there were two men and one woman left in the pool, but that apparently he had it backwards because there were two women and one man left in the pool.

When questioned at the hearing as to what he asked the clerk and what he meant by his question prior to excusing Ms. Askew, the prosecutor responded:

Because I think at this point in time, the defense had released— they had used up their last challenge, as I recall. I was looking for a leader on the jury panel, someone who would be able to be the leader. And in my opinion, the ones that were up there, that we had selected, would be good jurors. But I thought that the nature of this case with three defense lawyers and the fact of the type of case that it was, I was interested in hopefully having someone— looking for someone who would be a foreman or a foreperson.

[THE STATE:] What did you mean when you asked that question to the [clerk] about was there a white man out there?

[THE PROSECUTOR:] I thought—I was not sure approximately how many folks were out there. There was two women and one man or two men and one woman. And Mr. Cowan had told me—we

had gotten toward the end and Mr. Cowan had told me there was a white person who was out there and this person would make a good leader and that was toward the end of the jury selection.

It is clear from the prosecutor's response on remand above that he had two stated concerns which prompted him to make his questionable remark to the clerk: (1) he was looking for a leader on the jury panel and Mr. Cowan had told him about a white person in the jury pool who would make a good leader; and (2) he was confused about the number of persons remaining in the jury pool. The prosecutor's statement about looking for a leader and what Mr. Cowan told him is a more direct response to his question to the clerk than his statement about being confused about the number of persons remaining in the jury pool. However, when called upon at trial to explain his remark that he had made to the clerk, his *sole* response was in essence that he was confused about the number of persons remaining in the jury pool. It is most interesting to note that when the matter was fresh on his mind at trial, his explanatory statement never included anything about looking for a leader or anything that Mr. Cowan or anyone else had told him. His stated concern about leadership was made for the first time three years thereafter. Most assuredly his recall was better at trial as opposed to three years later.

As to the specific question at the hearing regarding his excusal of Ms. Askew, the prosecutor was asked and responded:

[THE STATE:] All right. Now specifically when it came to your examination of Ms. Askew, can you recall why you excused Ms. Askew?

[THE PROSECUTOR:] Well, the thing with Ms. Askew as I recall, also from looking at the transcript, I think that she had testified in the voir dire she said that she worked at Perdue for about eight years. She was single and had one son, seven years old. There were two things that concerned me about Ms. Askew, one is that she did not appear to be a leader, would not appear to be a leader on this particular jury. And the second thing that concerned me was that Mr. Cowan had told me that . . . where she resided, there was some people in the home in which she resided that had to do with drugs. And I was concerned about any juror who would be on— any juror who had in [sic] connection with drugs or involved with drugs whatsoever. And that also concerned me. For those two reasons, I excused her.

STATE v. SESSOMS

[119 N.C. App. 1 (1995)]

Here it appears that at the hearing the prosecutor had two stated concerns with Ms. Askew, neither of which appears in any manner on the record of jury selection: (1) that she did not appear to be a leader, and (2) that a reliable source had told him that there were people in the home in which she lived that had a connection with drugs. The prosecutor's first concern was apparently just a "hunch." No questions were asked of Ms. Askew to determine if she was a leader or possessed leadership-type qualities, although these questions were asked to other potential jurors. Because the prosecutor did not make any inquires to determine whether Ms. Askew was a leader or possessed leadership-type qualities, there is nothing on the record showing that this "hunch" was race-neutral. *Compare U.S. v. Horsley*, 864 F.2d 1543 (11th Cir. 1989) (where the prosecutor's explanation that "I just got a feeling about him" was legally insufficient to refute a prima facie case of purposeful racial discrimination). Further, I find persuasive the testimony by Mr. Overton, one of the defense attorneys involved in the trial of the case. Mr Overton testified that immediately after the clerk of court called the name of Ms. Askew, "I recall [the prosecutor] getting up at that point and coming towards the bench where the two clerks were sitting. My recollection of what he said was that . . . he said, you were supposed to call the white man or you should have called the white man." It appears that the prosecutor asked his question of the clerk immediately upon recognizing that Ms. Askew was black. Apparently the prosecutor had this "hunch" before he even asked Ms. Askew a single question.

The prosecutor's second concern, similarly, does not appear in any manner on the record of jury selection. There was not a single question asked to Ms. Askew which related to drugs or drug use. I recognize that the prosecutor's explanation for this was that Deputy Cowan had told him this information about Ms. Askew. I also recognize that the prosecutor was not required to ask Ms. Askew any questions about anything. However, the record shows that four people ultimately seated on the jury were related to or had friends who were not just known to use drugs, but who had been criminally charged with drug violations. Under these circumstances, and considering the prosecutor's stated concerns, I find very troublesome the absence of any questions, within the record of jury selection, related to drug use during questioning of Ms. Askew and the absence of any reference to anything Deputy Cowan allegedly told the prosecutor.

The prosecutor excused Ms. Askew without the first question that would indicate her leadership abilities or lack thereof. He did not ask

Ms. Askew any questions regarding the rumor Deputy Cowan told him about people in her home having a connection with drugs. I also note that at trial the prosecutor had ample opportunity to bring to the court's attention any concerns that he had as a result of any information given to him by Deputy Cowan. In the first appeal of this case, this Court noted that the jury was excused from the courtroom immediately after the prosecutor asked his question of the clerk regarding "a white male" in order for the court to hear motions. Defendant then made a *Batson* motion, citing as support the question the prosecutor asked of the clerk.

It appears to me that if the prosecutor was genuinely concerned about alleged drug use in Ms. Askew's home or Mr. Phelps' leadership abilities, when attempting to explain his reason for his comment to the clerk, he would have stated or made some reference to those concerns contemporaneously with his first explanatory statement of record. Instead, the record is devoid of any reference to his subsequent two concerns which should have been fresh on his mind and not only subject to recall three years later. This is not plausible and flies in the face of credulity.

I recognize that "[s]o long as the motive does not appear to be racial discrimination, the prosecutor may exercise peremptory challenges on the basis of 'legitimate "hunches" and past experiences.' " *State v. Porter*, 326 N.C. 489, 498, 391 S.E.2d 144, 151 (1990) (*quoting State v. Antwine*, 743 S.W.2d 51, 65 (Mo. 1987) (en banc), *cert. denied*, 486 U.S. 1017, 100 L.Ed.2d 217 (1988)). I also note that while the ultimate racial makeup of the jury is not dispositive, it is relevant. *State v. Smith*, 328 N.C. 99, 400 S.E.2d 712 (1991). However, the fact that the jury in the instant case contained eight black jurors does not address the issue at hand, whether the excusal of Ms. Askew was for racial reasons. *Batson* protects against the excusal of *any* juror for reasons of race, regardless of the racial make-up of the other members of the jury. I believe a review of the jury selection process shows that the prosecutor never intended to keep Ms. Askew, a black woman, on the jury. The prosecutor clearly intended to excuse Ms. Askew solely for the purpose of seating a "white male" on the jury. His actions were clearly racially motivated. This is buttressed by the further fact that, although the prosecutor asked Mr. Phelps more detailed questions than he asked Ms. Askew, he did not ask Mr. Phelps any question that would tend to show his leadership abilities or lack thereof. *Batson* is to protect against this type of purposeful discrimination.

**STATE v. SESSOMS**

[119 N.C. App. 1 (1995)]

The majority asks, "How plausible is it that the prosecutor would use racially discriminatory tactics to exclude blacks where not only defendant, but Judge Hudson, Deputy Cowan, and two of the State's key witnesses were also black?" My response to that question is, how plausible is it that the prosecutor, immediately after recognizing that the next juror called was black, would ask, "is there a white male out there?", in front of eight black jurors, defendant, Judge Hudson, Deputy Cowan, and two of the State's key witnesses, all of whom were also black? I guess the majority would answer, not very plausible! But yet, it happened. The majority opinion overlooks the fact that discrimination does not always take place in an overt form. As a matter of fact, in today's time it seldom does. It can, and often does take place in a quiet, subliminal or subtle fashion. I ask, is the emperor wearing new clothes? The answer is no. As much as we would like to have a society in which discrimination does not exist, we are not there.

As previously stated, this Court held that the prosecutor's original explanatory statement, considered in its proper context, may have adequately explained the meaning of his question to the clerk and his subsequent peremptory challenge of Ms. Askew. *See State v. Hall.* In my opinion, although the prosecutor's original explanatory statement seems confusing and totally unrelated to the question he asks the clerk, it appears to be race-neutral. A prosecutor's explanatory statements do not have to make sense so long as they are race-neutral. *Purkett v. Elem,* 63 U.S.L.W. 3814 (U.S. May 15, 1995) (No. 94-802). The evidence is manifestly clear and uncontradicted that the prosecutor's action was racially motivated; and, a review of the jury selection process, *all* of the prosecutor's explanatory statements, and defendant's evidence in rebuttal leads to the inescapable conclusion that the prosecutor's explanatory statements were pretextual.

The prosecutor's comment to the clerk and his subsequent action are unfortunate. To my knowledge, they appear to be out of character for this prosecutor. However, the record speaks for itself and we must view the record as it in fact appears before us.

Since *Batson* was decided, no case in this State has been found to have a *Batson* error. Although I do not quarrel with those decisions, if *Batson* is to have any meaning, then the facts of this case most assuredly fit a *Batson* violation.

I therefore vote to award defendant a new trial.