DENICE FRANCES GERSCH, Plaintiff,
v.
PETER MICHAEL FANTASIA, Defendant.
No. COA06-741
Court of Appeals of North Carolina.
Filed February 6, 2007
This case not for publication
Ann Marie Vosburg for plaintiff-appellee.
Darsie, Sharpe, Mackritis & Dukelow, P.L.L.C., by Lisa M. Dukelow, for defendant-appellant.
MARTIN, Chief Judge.
Defendant Peter Michael Fantasia appeals from a domestic violence protective order entered 3 February 2006. For the reasons below, we affirm.
Plaintiff Denice Frances Gersch (Ms. Gersch) and defendant had been engaged and one child was born during the parties' relationship. Ms. Gersch filed a complaint and motion for a domestic violence protective order on 25 January 2006. The next day, the trial court entered an ex parte domestic violence protective order against defendant based on allegations that he hit Ms. Gersch during a visitation exchange. The matter came on for hearing on 3 February 2006. According to Ms. Gersch, on the afternoon of 24 January 2006, she drove to her parent's house with the parties' infant son for a visitation exchange with defendant. Upon parking her automobile in the driveway, Ms. Gersch's father, Mr. Gersch, took the infant carrier out of the automobile, and carried the infant towards his house. Defendant asked Mr. Gersch, "Where [are] you going with my son?" and grabbed the infant carrier. When Mr. Gersch tried to push defendant back, defendant punched Mr. Gersch, who fell to the ground. Defendant then kicked Mr. Gersch in the head. Ms. Gersch testified that she "jumped on Mr. Fantasia, grabbing him, trying to pull him off my 62-year-old father and my five-month old son. He slung me . . . . I ended up being slung into the railing." Mr. Gersch then rushed into the house and locked the door. Ms. Gersch testified that her mother took photos of the bruises she developed on her side as the result of being flung into the railing.
Mr. Gersch testified that when he took the infant carrier out of his daughter's automobile, defendant started yelling at him. As Mr. Gersch started up the steps, defendant tried to grab the infant seat and Mr. Gersch knocked defendant's arm away. Defendant hit Mr. Gersch, who fell down, and then defendant kicked Mr. Gersch in the head. Mr. Gersch testified that he saw Ms. Gersch and defendant tussling as he ran into the house with the infant. That night, Mr. Gersch was rushed to the hospital and received stitches on his face. Deputy Darlene Harper of the Wake County Sheriff's Office was called to the hospital. Deputy Harper testified at the hearing that she took photos of Ms. Gersch's left side and chest area and that Ms. Gersch had "red-like whips on her side[] and some bruising up across her chest area."
Defendant testified that a friend drove him to Ms. Gersch's parent's house to pick up his infant son for court ordered visitation. Upon Ms. Gersch parking her automobile in her parent's driveway, defendant's friend pulled his automobile into the driveway. Defendant exited the automobile as Ms. Gersch took the parties' infant son out of her automobile and gave the infant to her father, Mr. Gersch, who started up the steps to the house. According to defendant, when he attempted to take his son, Mr. Gersch pushed him and grabbed his arm. Thereafter, Ms. Gersch took the carrier out of her father's hands, and then Mr. Gersch tried to "swing" at defendant. Defendant testified that in response, he "took my right hand to block him, and I did catch him in the eye." Mr. Gersch again tried to hit defendant, who hit Mr. Gersch with his left hand. Mr. Gersch fell to the ground and hit his head on the brick foundation. Defendant stated that Ms. Gersch kicked and slapped him; he denied kicking Mr. Gersch. Defendant testified that he sustained bruises from Mr. Gersch grabbing him.
Defendant's friend, Mr. Mersinger, testified that he accompanied defendant to the Gersch residence on 24 January 2006. Mr. Mersinger stated that he observed defendant reach for the infant carrier, and that Mr. Gersch pushed defendant "out of the way and apparently had grabbed him as well." He saw defendant punch Mr. Gersch in the eye. Mr. Mersinger testified that he did not see defendant kick Mr. Gersch in the head nor did he see Ms. Gersch pull defendant off of her father because "[t]here was no need to." Officer W. William Scott Ross of the Wake County Sheriff's Office testified that he responded to the incident, spoke with Ms. Gersch, Mr. Gersch and defendant, and after conferring with his sergeant, did not seek warrants on anyone. Officer Ross further testified that Ms. Gersch did not tell him that defendant assaulted her until Officer Ross informed her that he was not taking defendant to jail. The trial court entered a domestic violence protective order against defendant for one year. In the order, the trial court found that defendant intentionally caused bodily injury to Ms. Gersch when "Defendant slung [her] into railing on steps, [] causing bruising to [her] side and chest." Defendant appeals.
Defendant contends the trial court erred in entering the domestic violence protective order because the evidence presented does not support a finding of domestic violence.
Section 50B-1(a) of the North Carolina General Statutes defines domestic violence as:
(a) Domestic violence means the commission of one or more of the following acts upon an aggrieved party or upon a minor child residing with or in the custody of the aggrieved party by a person with whom the aggrieved party has or has had a personal relationship, but does not include acts of self-defense:
(1) Attempting to cause bodily injury, or intentionally causing bodily injury;
N.C. Gen. Stat. § 50B-1(a) (2005). Where the trial judge sits as the finder of fact, "and where different reasonable inferences can be drawn from the evidence, the determination of which reasonable inferences shall be drawn is for the trial judge." Sharp v. Sharp, 116 N.C. App. 513, 530, 449 S.E.2d 39, 48, disc. review denied, 338 N.C. 669, 453 S.E.2d 181 (1994) (citation omitted) (emphasis omitted). "The trial judge has the authority to believe all, any, or none of the testimony." Id. The trial court's findings "turn in large part on the credibility of the witnesses, [and] must be given great deference by this Court." State v. Sessoms, 119 N.C. App. 1, 6, 458 S.E.2d 200, 203 (1995), aff'd per curiam, 342 N.C. 892, 467 S.E.2d 243, cert. denied, 519 U.S. 873, 117 S. Ct. 191, 136 L. Ed. 2d 129 (1996). Accordingly, where the trial court's findings of fact are supported by competent evidence, they are binding on appeal. Harris v. Harris, 51 N.C. App. 103, 105, 275 S.E.2d 273, 275, disc. review denied, 303 N.C. 180, 280 S.E.2d 452 (1981).
Here, the trial court found that defendant intentionally caused bodily injury to Ms. Gersch by having, "slung P[laintiff] into railing on steps, [] causing bruising to P's side and chest." This evidence is supported by Ms. Gersch's testimony that she jumped on defendant to "pull [him] off my 62-year-old father" and, at that point, "[defendant] slung me . . . . I ended up being slung into the railing." Ms. Gersch further testified that a photograph taken by her mother five days after the incident showed bruising on "my side, where I ended up on the side of the railing of the house." In addition, Deputy Darlene Harper testified that at the time she saw Ms. Gersch, Ms. Gersch "had red-like whips on her sides, and I  on her side, her left side. And some bruising up across her chest area." Based on our review of the evidence, we conclude that there was competent evidence to support the trial judge's finding that defendant intentionally caused plaintiff bodily injury and that this finding is sufficient to support the trial court's conclusion of law, that defendant had committed an act of domestic violence against Ms. Gersch.
Further, we are unpersuaded by defendant's assertion that the trial court improperly shifted the burden of proof onto defendant in determining that defendant committed an act of domestic violence. After hearing the testimony and arguments from the parties' attorneys, the trial court stated:
As attorneys very well know, matters of this come down to credibility of all  of all of the witnesses.
And the one thing that I did not hear a reasonable explanation from  from the defendant or his eyewitness, who, quite frankly, couched his testimony very carefully and said words quite frequently, such as, apparently, don't fully recall, didn't see, at no time did I see.
And there's no explanation for the bruising to the plaintiff. So this court will find that on January the 24th Mr. Fantasia did commit an act of domestic violence of the plaintiff. . .
We interpret the trial court's statement as a comment on the fact that, although there were differing versions of the incident, defendant did not rebut plaintiff's testimony that she received bruises on her left side as the result of being "slung into" the railing, and therefore the trial court believed Ms. Gersch's version. As noted above, trial court's findings "turn in large part on the credibility of the witnesses, [and] must be given great deference by this Court." Sessoms, 119 N.C. App. at 6, 458 S.E.2d at 203. Accordingly, the trial court properly entered the domestic violence protective order.
The trial court's entry of a domestic violence protective order against defendant is affirmed.
Affirmed.
Judges McGEE and HUNTER concur.
Report per Rule 30(e).