SUSAN S. ELROD, Petitioner/Plaintiff,
v.
CHARLES JEFFREY ELROD, Respondent/Defendant.
No. COA08-115
Court of Appeals of North Carolina
Filed August 19, 2008
This case not for publication
The McDonald Law Office, PA, by Diane K. McDonald, for plaintiff-appellee.
William E. Loose, for defendant-appellant.
WYNN, Judge.
This Court gives great deference to a trial court's findings of fact, as they "turn in large part on the credibility of witnesses."[1] Here, because the trial court's findings are supported by competent evidence including witness testimony and medical records, we find no error in the trial court's entry of the domestic violence protection order.
Plaintiff Susan S. Elrod and Defendant Charles Jeffrey Elrod married in 1998 but entered into a separation agreement on 2 May 2007. However, Mr. Elrod continued to live in the marital residence for the purpose of completing improvements in anticipation of selling the home. According to Ms. Elrod, in the late afternoon of 12 August 2007, she and Mr. Elrod were discussing what work needed to be done on the house, when Mr. Elrod requested that she look at the "door sweep" because it was damaged. Mr. Elrod got up and went to the door, opened it halfway, and placed a rug under the door, and Ms. Elrod kneeled down to look at the door sweep and agreed that it needed to be replaced.
Ms. Elrod testified that she did not remember anything else after that moment until she woke up in bed at 3 a.m. with a "terrible headache" and "[v]ery nauseous to [her] stomach," and no recollection as to how she got to bed. After asking Mr. Elrod, who was present, for something for her headache and nausea, Ms. Elrod went back to sleep, waking again at 5 a.m. Ms. Elrod was still very sick and vomited, then saw in the bathroom mirror that she had a black eye. Mr. Elrod told her that she had gotten the black eye when she had a seizure. Ms. Elrod then went to the hospital, where a doctor asked if Mr. Elrod had hit her and she responded that Mr. Elrod had told her that she had a seizure and hit her head.
Ms. Elrod testified that, while at the hospital, she asked her sister to stay with her and not let Mr. Elrod around her IVs because of Mr. Elrod's strange behavior, including acting "very upset" and "nervous." According to Ms. Elrod, "[Mr. Elrod] was bending over my face and rubbing my head" and that it gave her an "odd feeling." Although Ms. Elrod initially denied being abused by Mr. Elrod, she explained that she became "worried" upon discovering the seriousness of her injuries and Mr. Elrod's failure to explain how they occurred. Medical testimony from a forensic nurse and doctor who examined and treated Ms. Elrod outlined her injuries, including bruising behind one ear and on the left side of her neck, a black eye, and irritation on her scalp described as "little reddish areas scattered throughout in her hair clumped in areas." Ms. Elrod also suffered from an acute epidural right temporal hematoma, brain contusions, and multiple skull fractures requiring surgery to use titanium plates and screws to piece back together her skull. The doctor testified that he believed Ms. Elrod's injuries to be life-threatening and that "significant force must be applied in this area of the skull in order to crack the bone in that manner." He further stated that he found the injuries to be consistent with domestic violence and that Ms. Elrod showed no signs of having suffered a seizure.
Several members of Ms. Elrod's family testified at the hearing, including her sister Teresa Price, who recounted that Mr. Elrod acted "very jittery and nervous" and "would continually pace." Ms. Price also stated that Mr. Elrod provided different stories when the doctors and nurses questioned him regarding what happened to plaintiff. John Swann, Mr. Elrod's brother, testified that Mr. Elrod acted nervous, was "hovering" over Ms. Elrod, and told him "things that were inconsistent with what [he] knew had happened." Christian Cline, Ms. Elrod's son, recalled that he spoke to Mr. Elrod at the hospital and hinted that Mr. Elrod had perhaps caused Ms. Elrod's injuries through domestic abuse. Mr. Cline said that Mr. Elrod responded by denying that he had injured Ms. Elrod and then saying, "What man would walk away from three million dollars?"
According to Mr. Elrod, he had his back to Ms. Elrod while she was checking the door sweep, and he heard a sound and turned around to see her falling. Although he reached out to catch her, he could not hold on and instead fell to the ground with her. Mr. Elrod stated that, as Ms. Elrod fell, she hit her forehead on an iron and oak banister and then hit her head on the granite floor. Her eyes were then "back up in her head. She was trembling. She was wet all over, very stiff. She had saliva coming out of her mouth." Mr. Elrod claimed that after Ms. Elrod regained consciousness, he offered to take her to the hospital, but she refused and "just wanted to go to bed." He stayed with her all night, "[c]ontinuously putting ice on her," and repeatedly asking to let him take her to the hospital. Ms. Elrod finally agreed to go to the emergency room sometime after 7 a.m.
On 15 August 2007, three days after sustaining the injuries, Ms. Elrod filed a complaint and motion for a domestic violence protective order against Mr. Elrod. An ex parte domestic violence protective order was entered that day. The matter then came on for hearing on 12 and 15 October 2007, when both parties presented witnesses and evidence to the trial court. On 15 October 2007, the trial court entered a domestic violence protective order against Mr. Elrod for one year, finding that: defendant caused serious injury to the plaintiff in that her eye socket was cracked and she had injuries to both sides of her head and neck. Additionally her skull was cracked in multiple places and the court was not swayed by the defendant's explanation of how the injuries occurred.
Mr. Elrod now appeals, arguing that the trial court erred when it found that he had caused serious injury to Ms. Elrod, when such a finding was not supported by competent evidence and the findings did not support the conclusion that domestic violence had occurred. We disagree.
Where the trial judge sits as the finder of fact, and "where different reasonable inferences can be drawn from the evidence, the determination of which reasonable inferences shall be drawn is for the trial judge." Sharp v. Sharp, 116 N.C. App. 513, 530, 449 S.E.2d 39, 48 (citation and quotation omitted), disc. review denied, 338 N.C. 669, 453 S.E.2d 181 (1994). "The trial judge has the authority to believe all, any, or none of the testimony." Id.; see also State v. Sessoms, 119 N.C. App. 1, 6, 458 S.E.2d 200, 203 (1995) ("The trial judge's findings . . . turn in large part on the credibility of the witnesses, [and] must be given great deference by this Court."), aff'd per curiam, 342 N.C. 892, 467 S.E.2d 243, cert. denied, 519 U.S. 873, 136 L. Ed. 2d 129 (1996). Accordingly, when the trial court's findings of fact are supported by competent evidence, they are binding on appeal. Harris v. Harris, 51 N.C. App. 103, 105, 275 S.E.2d 273, 275, disc. review denied, 303 N.C. 180, 280 S.E.2d 452 (1981).
Our General Assembly has defined domestic violence as: the commission of one or more of the following acts upon an aggrieved party or upon a minor child residing with or in the custody of the aggrieved party by a person with whom the aggrieved party has or has had a personal relationship, but does not include acts of self-defense:
(1) Attempting to cause bodily injury, or intentionally causing bodily injury[.]
N.C. Gen. Stat. § 50B-1(a) (2005).
In the instant case, the trial court found that Mr. Elrod intentionally caused Ms. Elrod serious injuries, based in part on the medical records and testimony outlining the many injuries suffered by Ms. Elrod. As noted by the trial court, in addition to her cracked eye socket, hematomas and contusions on both sides of her head, and injuries to the left side of her mandible and her neck area, Ms. Elrod's "skull was fractured in so many places that [the doctor] didn't even take time to count." The trial court stated that it had considered Mr. Elrods's explanation for Ms. Elrod's injuries, but found it "not plausible," as the trial court could "not fathom how all of these injuries occurred taking everything into consideration surrounding that explanation."
These findings are supported by considerable competent evidence in the record, including the medical records and testimony that Ms. Elrod's injuries were consistent with domestic violence and that she showed no signs of having suffered a seizure. The trial court also heard from Ms. Elrod as to prior incidents in which Mr. Elrod had verbally and physically abused her, as well as an occasion when he had destroyed her clothes. Pictures from the Elrod house and Ms. Elrod's description suggested that she would have had to fall four feet in order to hit her head on the banister in the way described by Mr. Elrod. Although Mr. Elrod presented some evidence to the contrary, including a seizure suffered by Ms. Elrod three years earlier while on certain medications, it is not our role to reweigh evidence or the credibility of witnesses on appeal. See Sharp, 116 N.C. App. at 530, 449 S.E.2d at 48.
Accordingly, we hold that competent evidence in the record supports the trial court's finding that Mr. Elrod intentionally caused Ms. Elrod's injuries. The trial court's entry of the domestic violence protective order against Mr. Elrod is affirmed.
Affirmed.
Judges ELMORE and GEER concur.
Report per Rule 30(e).
NOTES
[1] State v. Sessoms, 119 N.C. App. 1, 6, 458 S.E.2d 200, 203 (1995), aff'd per curiam, 342 N.C. 892, 467 S.E.2d 243, cert. denied, 519 U.S. 873, 136 L. Ed. 2d 129 (1996).